GREELEY, APPELLANT, *v.* CASCADE COUNTY, RESPONDENT.

[No. 1,116.]

[Submitted April 20, 1899. Decided May 29, 1899.]

*Counties — Action on Claims — Limitations — Warrants— Checks—Delay in Presentment.*

1. Compiled Statutes 1887, Division V, Section 764, and Political Code, Section 4288, giving a claimant against a county a right to appeal from a rejecting of the claim by the commissioners, does not preclude the maintenance of an independent action on the rejected claim, in view of Code of Civil Procedure, Section 517, providing that actions on rejected claims against a county must be commenced within six months after the first rejection.

2.  Under Code of Civil Procedure, Section 517, requiring actions on rejected claims against a county to be commenced within six months after the first rejection, a claim that was rejected before the passage of the act is barred if no action is commenced thereon within six months after its passage.

3.  One cannot maintain an action against a county on a county warrant, in view of Political Code, Section 4290, requiring the treasurer to pay warrants in the order of presentation, thereby making mandamus the remedy of the holder of a warrant which the treasurer refuses to pay, though the refusal is based on the ground of payment by check, as Code of Civil Procedure, Sections 1960–1973, authorize a trial of issues raised by a traverse of a return to the writ.

*Semble.*—If, however, a county warrant were to be considered, in legal effect, the promissory note of the county, then it would be a claim or demand on which an action cannot be maintained to recover a money judgment until after the refusal of the board of county commissioners to order its payment by means of a new warrant.

4.  A rule requiring the payee of a check to stand the loss occasioned by his failure to present it until the bank on which it is drawn suspends payment, applies to checks drawn by a county treasurer to pay a warrant issued on a claim against the county.

*Appeal from District Court, Cascade County; Dudley Du Bose, Judge.*

ACTION by James Greeley against Cascade county.    From a judgment for defendant, and an order denying a motion for new trial, plaintiff appeals.    Affirmed.

*Thomas E. Brady* and *F. A. Merrill*, for Appellant.

The receipt of a check from a debtor does not operate as payment of the debt in the absence of an express agreement that it shall have that effect.    (See many cases cited on pages 167–170, Vol. 18, Am. and Eng. Ency. of Law; *Compton* v. *Dresbach*, 78 Cal. 15.)    The surrender and cancellation of a note or other instrument upon receipt of a check for it is not evidence that the check was in satisfaction of the instrument. (*Henry* v. *Conly*, 48 Ark. 267; *Thomas* v. *Winchester*, 115 N. Y. 51; *Cannonsburg* v. *Iron Co.* Pa. 4 Cent. Rep. 258.)    The rule is and was, as stated in section 4331 of the Civil Code, that the drawer and endorser of a check is exonerated by delay in presentment only to the extent of the injury which they suffer thereby.    ''The drawer of a check is not discharged by any length of delay in presentment, unless he has suffered actual loss or injury by reason of such delay, and then he is discharged only *pro tanto.*''    (Boone on the Law of Banking, Sec. 172, citing *Smith* v. *Jones*, 2 Bush. 103; *Bell* v. *Alex-*

*ander,* 21 Gratt. 1; *Syracuse* v. *Collins,* 3 Lans. 29; *Brust* v. *Barrett,* 16 Hun. 412; *Scott* v. *Meeker,* 20 Hun. 161; *Cox* v. *Boone,* 8 W. Va. 500, 23 Am. Rep. 627; *Compton* v. *Gilman,* 19 W. Va. 312, 42 Am. Rep. 776; *Stewart* v. *Smith,* 17 Ohio St. 72; *Kinyon* v. *Stanton,* 44 Wis. 479; *Stevins* v. *Park,* 73 Ill. 387; *Emery* v. *Hobson,* 63 Me. 32, 16 Am. Rep. 513; *Mordis* v. *Kennedy,* 23 Kan. 408.) "The maker of a check cannot object to a delay in presenting it unless he shows some special injury to himself resulting therefrom." (Newark on Bank Deposits, Sec. 204; and see *Bickford* v. *First Natl. Bank,* 42 Ill. 238; *Bull* v. *Kasson,* 123 U. S. 105.) Before defendant can ask to be exonerated or discharged from any of its obligation to plaintiff under this rule it must allege and prove that it sustained a loss by reason of plaintiff's delay in presenting the check; this it has not shown. The burden of proof of loss or injury by reason of delay in presentment of the check is on defendant. (Code of Civil Procedure, Secs. 3145, 3290.)

The defense of the statute of limitations is a personal privilege and must be taken advantage of by demurrer or answer, otherwise it is deemed to be waived. (*Kelly* v. *Kriess,* 68 Cal. 210; *Reagan* v. *Justices Ct.,* 75 Cal. 253, and see Sec. 558, Code Civ. Proc.) Defendant evidently attempted to plead the statute in the manner allowed by Sec. 749 of the Code of Civil Procedure, but did not state nor give the section nor subdivision as required, although a reference was made to Section 517 of the Code of Civil Procedure. (*Stewart* v. *Budd,* 7 Mont. 573; *Manning* v. *Dallas,* 73 Cal. 420.) Subdivision 2 of Section 517 applies only to claims which have been rejected by the county commissioners. The objection that mandamus and not an action at law was plaintiff's proper remedy, should have been made before answer and before trial. The defendant answered to the merits, the cause was tried on the issues so raised, and not until after the trial was this defense raised. The objection then came too late. (*Hockaday* v. *Board of Co. Com.,* 29 Pac. 291.) At common law counties could not be sued, but our statutes expressly

authorize counties to sue and be sued.  (Pol. Code, Sec. 4193; Comp. Stat. 1887, Sec. 774, 5 Div.)  But it is claimed that the liability of counties to suit has been so limited by the provisions of Sections 4286-4290 and Section 4299 of the Political Code that they cannot Le sued at all, or at least in the case of claims and accounts against them.

The utmost extent of limitation on the right to sue that can be extracted from these provisions, and nothing else is urged by the trial court, is that they suspend the right of the claimant to bring suit until his claim has been presented, audited and allowed or rejected, and that after it is allowed and a warrant issued the claimant must wait until the warrant can be paid in its proper order.  When that time has arrived and the warrant is not paid on presentation suit can be at once brought against the county and there is nothing in the statutes requiring the claimant to wait longer.  This is the general rule in all states except those where the common law immunity of counties from suits still exists.  (*Bank* v. *Franklin County*, 65 Mo. 105, (27 Am. Rep. 261); *Heffelman* v. *Pennington County*, 3 S. Dak. 162, (52 N. W. R. 851); *State* v. *Baker County*, 24 Ore. 141, (33 Pac. 530); Am. and Eng. Ency. Vol. 15, p. 1219.)  The sections of statute in relation to appeal from the disallowance of claims do not apply to this case because plaintiff's claim was not disallowed.  Section 4199 merely provides for the payment of judgments against a county, and instead of forbidding suits against a county assumes that there shall be suits and judgments against them. Mandamus would not be proper and only by an action can plaintiff obtain proper relief.  (*State* v. *Mayor*, 52 Wis. 423, 9 N. W. R. 607; *People* v. *Johnson*, 100 Ill. 537, 39 Am. Rep. 63; *Casset* v. *Barber Co.*, 39 Kan. 505, 18 Pac. 517; *Board* v. *Grant*, 9 Smedes & M. 77 (Miss.), 47 Am. Dec. 102; *People* v. *Brooklyn*, 11 Wend. 318 (N. Y.), 19 Am. Dec. 502; Mechem on Public Officers, Sec. 938.)

*C. B. Nolan, Attorney General*, for Respondent.

**PIGOTT, J.**—The plaintiff sued Cascade county upon two

alleged causes of action.    The subject of the first cause of action is a county warrant, of which the following is a copy:

"No. 399.    GREAT FALLS, Cascade County, Mont.,  }
                                     June 14, 1893.    }

"The treasurer of Cascade county will pay to James Greeley, or order, eleven hundred forty- three and 61-100 dollars for keeping Poor, etc., out of any moneys in the treasury belonging to the Poor Fund.

                                    "S. N. DICKEY,
               "Chairman Board of County Commissioners.
"HOWARD CROSBY, County Clerk.                    [SEAL.]"

It is alleged that the warrant was drawn for a duly audited and allowed claim of the plaintiff; that there was then to the credit of the poor fund a sum of money more than sufficient in amount to pay the warrant and all other warrants issued theretofore upon said fund, and that such funds were in cash and were in the hands of the treasurer; that the warrant was duly presented to the treasurer for payment; that the treasurer took up the warrant and stamped it as paid, but that, instead of paying the money called for by it, the treasurer delivered to plaintiff a check, signed by himself as treasurer of Cascade county, upon a bank which was then insolvent; that upon presentation to the bank upon which it was drawn the check was dishonored, and plaintiff has been unable to recover any money thereon; that soon after the suspension of the bank the defendant made and filed a claim to all the moneys deposited to the credit of the treasurer in said bank, and that defendant has collected and retained, and passed to its credit all dividends paid by the bank, or its receiver, upon the entire deposit; and that the defendant has wholly refused and neglected to pay plaintiff any part of said moneys due him upon said warrant, but has retained the whole thereof.    Plaintiff further alleges that he is still the owner of the warrant and the holder of the check given as a substitute therefor.

The defendant, by answer, admits that the claim of the plaintiff was allowed, and the warrant drawn, as stated; that the treasurer received the same, and gave a check upon the

bank for the amount, but alleges that the check was good on the 15th day of June, 1893, when plaintiff received it, and denies that the bank was insolvent at that time, but was solvent until the 24th day of July, 1893, when it closed its doors, and that the bank was willing and ready at all times until its suspension to pay the check, and that by the neglect of plaintiff to present the check the defendant lost the sum of money for which it was drawn. The other defenses set up by the answer to the first cause of action are not necessary to be stated.

The second cause of action is based upon a contract alleged to have been entered into between plaintiff and the defendant. Upon this cause of action plaintiff sought to recover $540. Among the defenses pleaded to this cause of action is the statute of limitations, the defendant averring that on March 13, 1894, the county auditor and the board of county commissioners of Cascade county duly rejected and disallowed the account and itemized statement upon which the second cause of action is based, and that since the date of the disallowance no action has been commenced on said account, except the one at bar, and defendant alleges that the second cause of action is barred by the statute of limitations, by virtue of Section 517 of the Code of Civil Procedure. Defendant further pleads that plaintiff has never appealed from the decision of the board of county commissioners in disallowing the account.

Trial was had by the court. The evidence established, among other things, that the check delivered to the plaintiff by the treasurer was held by plaintiff from June 15th until the bank closed on July 24th, and was never presented while the bank was open, and that the county, through its treasurer, laid claim to, and was allowed to prove its claim for, the full amount appearing on the books of the bank to the credit of the county, and that three dividends of 10 per cent. each had been paid to the county prior to the commencement of the action. After the submission of the cause, counsel for defendant moved for leave to have the cause reopened, in order that a motion might be made therein, which motion, not being op-

posed by plaintiff, was granted.   Defendant's counsel then
moved the court to render judgment for defendant upon the
first cause of action, because plaintiff cannot maintain an ac-
tion against the county, for the reason that the county, through
its board of commissioners, had already audited and allowed
plaintiff's claim, and had caused a warrant to be drawn and
delivered to him.   The court found for the defendant upon
the alleged first cause of action, on the ground that there was
no cause of action stated against the county, and dismissed the
complaint as to the second cause of action, finding that it was
barred by the statute of limitations.   Plaintiff appeals from
the judgment, and from an order denying his motion for a new
trial.

1.   The court below held that the right to appeal from the
decision of the board of commissioners, given by Section 764
of the Fifth Division of the Compiled Statutes of 1887, and
by Section 4288 of the Political Code, excludes the mainte-
nance of an independent action on the rejected demand; but,
in our opinion, the owner of such a claim is not confined or
limited to the remedy by appeal. He may pursue that remedy,
or he may bring an action upon the disallowed claim.   His
privilege is to take either course,—to appeal to the district
court within 30 days, or to sue upon the claim within six
months, after the rejection.   This view accords with the gen-
eral rule (7 Am. & Eng. Ency. Law [2d Ed.] 962), and is in
harmony with Section 517 of the Code of Civil Procedure, as
well as with the practice hitherto prevailing in Montana.

The learned judge was right, however, in dismissing the
complaint as to the second cause of action.   The complaint
was filed on March 31, 1896.   The account upon which the
second cause of action is based was rejected by the board of
county commissioners on the 13th day of March, 1894.   Sec-
tion 517 of the Code of Civil Procedure, which provides that
actions on rejected claims against the county must be com-
menced within six months after the first rejection thereof by
the board of commissioners, went into effect on the 1st day of
July, 1895.   The remedy is barred.   In the case of *Gutter-*

*man* v. *Wishon*, 21 Mont. 458, 54 Pac. 566, the question involved was elaborately considered, and we adhere to the views there expressed.

2. We are of the opinion that the learned judge of the district court was correct in holding that the facts stated in the first cause of action are insufficient to support any judgment thereon that might be rendered in favor of plaintiff, who seeks to recover a money judgment against the county upon the warrant. Section 4193 of the Political Code declares that a county has power to sue and be sued. Section 4286 of the same Code provides for the method of presenting accounts chargeable against the county to the board of county commissioners, while the immediately succeeding section provides that no account must necessarily be passed upon by the board unless itemized and verified. Section 4288 creates the right of appeal from the action of the board in allowing or disallowing an account or claim. Section 4290 is as follows: ''Warrants drawn by order of the board on the county treasurer for the current expenses during each year must specify the liability for which they are drawn, and when they accrued, and must be paid in the order of presentation to the treasurer. If the fund is insufficient to pay any warrant, it must be registered and thereafter paid in the order of its registration.'' Section 4199 provides that no execution shall issue upon a judgment rendered against the county, or against any county officer, in an action prosecuted by or against him in his name of office, when the judgment is to be paid by the county, but that the judgment must be paid as other county charges by the treasurer upon the delivery of a proper voucher therefor; the voucher being, as intimated by Mr. Justice Bach in *Powder River Cattle Co.* v. *Commissioners of Custer Co.*, 9 Mont. 145, 22 Pac. 383, the warrant of the board of commissioners. Subdivision 5 of Section 4350 directs the treasurer to disburse the county moneys only on county warrants issued by the county clerk, based on the orders of the board of county commissioners, or as otherwise provided by law. Under these provisions, and the policy of the law as declared in *Powder*

*River Cattle Co.* v. *Commissioners of Custer Co.*, *supra*, we think that "the purpose of the statute is quite apparent. It is to protect the people from unjust payments ordered by the commissioners, and to protect them from unnecessary expenses of litigation. Any taxpayer may appeal from any order made by the board and directing the payment of money; and on the other hand, the board is authorized to pass upon all claims for the payment of money against the county, and thus avoid the unnecessary costs involved in an action at law in all cases where they consider the demand just and legal. The demands against a county are numerous, and it is only just and proper that the representatives of the county should have an opportunity to examine and pass upon such accounts or demands before they are made the subject of an action at law." It was not contemplated by the legislature that the owner of a warrant which the treasurer refuses to pay may obtain a money judgment against the county in an action upon the warrant. If such judgment were obtained, the same necessity would exist for presenting it to the board of commissioners for audit and allowance as existed with respect to the account upon which the warrant was issued. A warrant upon the treasurer as a means of paying the judgment would then be issued, and this warrant would be paid by the county treasurer upon presentation, or registered, if not paid, and then be liquidated in its proper order. The board of commissioners, as appears by the complaint, had fully performed its duty when it caused to be issued to the plaintiff the warrant sued upon.

There may be, and doubtless are, remedies, other than *mandamus*, which, in view of its peculiar circumstances, could be invoked in this case; but certainly, if the treasurer is in funds, *mandamus* against him, and not an ordinary action upon the warrant, is a proper remedy. Counsel for the plaintiff insists that *mandamus* does not lie, for the reason that there are disputed questions of fact which have arisen since the warrant was issued; but this is no sufficient reason why a writ of mandate should be quashed. It is true that, originally, no return whatever was permitted to the alterna-

tive writ.    Afterwards a return was required, but the matters stated therein were taken as true, and no traverse was permitted; the sole remedy being an action for damages occasioned by the return, if false.    By St. 9 Anne, c. 20, the matters stated in the return to the alternative writ were allowed to be controverted, and the issues thereby raised tried by jury, in cases involving contests for municipal offices; and in the first year of the reign of William IV. an act (chapter 21) was passed under which the issues raised by traverse to the return might in all cases be tried and determined.    Our statute (Sections 1960–1973 of the Code of Civil Procedure) with respect to *mandamus*, or the "writ of mandate," as it is called, assimilates such a proceeding, in respect of pleading and practice, to the ordinary civil action.    Of course, such a proceeding cannot be maintained where there is a plain, speedy and adequate remedy in the ordinary course of law; nor can it be upheld unless brought to compel the performance of an act which the law specially enjoins as a duty.    (See *State ex rel. Great Falls Water Works*, v. *City of Great Falls*, 19 Mont. 518, 49 Pac. 15.)    We are aware that many courts of high standing hold that an ordinary action in the nature of assumpsit, debt or covenant may properly be brought upon a warrant such as the one in question here.    Some of these decisions are upon statutes quite similar to ours, while others are based upon provisions of laws differing widely from those of Montana which are applicable.    *Goldsmith* v. *Baker City*, 31 Or. 249, 49 Pac. 973, is one of these cases, and it cites with approval other leading adjudications which it follows.    Upon the other hand, the conclusion which we reach is supported by *Bacon* v. *City of Tacoma*, 19 Wash. 674, 54 Pac. 609, and the cases there cited, as well as by *Klein* v. *Board of Supervisors*, 51 Miss. 878, by *Polk* v. *Board of Supervisors*, 52 Miss 422, and, it would seem, by *Dana* v. *City & County of San Francisco*, 19 Cal. 486, *Alden* v. *Alameda Co.*, 43 Cal. 270, and *Day* v. *Callow*, 39 Cal. 593.    In *Klein* v. *Board of Supervisors*, *supra*, the action was upon county warrants issued upon claims audited and allowed by the board.    A demurrer for in-

sufficiency was interposed to the declaration, which presented the question whether the holder of the county warrant could sue the board of supervisors by ordinary action. The court there said: "Without a statute authorizing a suit against the board, it would not be maintainable. The statute giving the right to sue does not embrace a case where a claim has been allowed and a warrant issued. It is only where the board of supervisors may refuse to allow a claim that suit may be brought on it. A warrant is evidence of allowance, not of refusal. If the claim has been allowed, the creditor has a judgment, and does not need another, which would be satisfiable with another warrant." *Bacon* v. *City of Tacoma*, *supra*, was an action to recover the amount averred to be due upon city warrants, which the complaint alleged were presented for payment to the treasurer, but no payments made thereon, though payment was often demanded, that the city had sufficient money in its general fund out of which the warrants might be paid, and that the refusal of the defendant city to pay the warrants was for the reason that there was a dispute as to the fact between plaintiff and the city as to whether there was anything due on the warrants, the city claiming that the warrants had been paid and were forgeries, which plaintiff denied. A demurrer to the complaint was sustained. The sole question considered by the supreme court was whether such an action could be maintained. The court held that it could not be, and, further, that *mandamus* was a proper remedy. In *Abernethy* v. *Town of Medical Lake*, 9 Wash. 112, 37 Pac. 306, the court remarked: "These warrants the treasurer must pay, in the order of their issuance, out of any funds coming into his hands belonging to the general fund; and, if he refuses, a like suit (*mandamus*) will lie against him. The statutes prescribe how municipal corporations shall pay ordinary contract debts, *viz.*, by the issuance of a warrant, payable in its order, with interest from date of presentation. But it is not contemplated that the owner of an allowed claim shall sue the corporation generally, upon the original contract, when the clerk or other officer refuses to issue a warrant, nor that

the holder of a warrant which the treasurer declines to pay shall get a judgment upon the warrant. Such a judgment, like a judgment upon a claim disallowed, would again be settled by a warrant, and take its turn in the order of payment. The contracting powers of the town have done all they can by the making of the contract and the allowance of the claim. It is the ministerial officers who are now in fault, and the plaintiff must move them to action before he is entitled to any other remedy." So in *Cloud* v. *Town of Sumas*, 9 Wash. 399, 37 Pac. 305, the court say: "If this action can be maintained upon the warrants which have been issued, then a like suit might be maintained upon the warrants issued in satisfaction of this judgment, and so on without limit. Clearly the law contemplates no such proceedings. The plaintiff already has the town's evidences of indebtedness, issued to him in regular form, and, if the treasurer should refuse to pay them in their regular order, he can resort to a *mandamus* to compel such payment. * * * And the questions, if they are further insisted upon, affecting the legality of such warrants, can be tried in that proceeding." If, however, the warrant is, in legal effect, the promissory note of the county, as was decided in *Board of Commissioners* v. *Day*, 19 Ind. 450, then it would seem to be a claim or demand on which an action cannot be maintained to recover a money judgment until after the refusal of the board to order its payment by means of a new warrant; but this question is foreign to the case at bar, and is suggested in illustration only.

In the proper proceeding the plaintiff would be entitled to recover the amount for which the warrant was drawn, less such sum as equals the actual loss or injury, if any, sustained by the county by reason of his delay in presenting the check to the bank. Instead of requiring the treasurer to pay the warrant in cash, as was his right, he elected to accept the check of that officer in conditional payment. The funds upon which the check was drawn, and out of which it was payable, were in the custody of the treasurer as bailee and trustee. They belonged to the county. (*City of Livingston* v. *Woods,*

20 Mont. 91, 49 Pac. 437, and cases therein cited.) The plaintiff, in taking the check, dealt with the county as represented by its treasurer, and not with the treasurer as a private person. · Under these circumstances, it is difficult to perceive any reason why the plaintiff should be heard to claim exemption from the obligation to make due presentment of the check, or should be permitted to escape the consequences of his neglect to do so. We are of the opinion that the same rule in that regard must be applied to the plaintiff, in his transaction with the county through its treasurer, as would be applicable to the ordinary case of a check holder whose unreasonable delay in demanding payment of the bank results in loss or injury to the drawer.

The judgment and order appealed from are affirmed.

*Affirmed.*

BRANTLY, C. J., and HUNT, J., concur.