## MARTIN COUNTY v. GILLESPIE COUNTY.

Decided November 5, 1902.

1.—County—Action Against—Demand—Negotiable Instruments.

It seems that in an action against a county on negotiable interest coupons of bonds issued by it, it is not necessary to present the claim to the commissioners court before bringing suit.

2.—Same—Pleading—Amendment—New Cause of Action.

In a suit upon interest coupons on county bonds, an amendment alleging their presentation to and refusal to pay by the commissioners court, is merely an enlargement of a general allegation in the original petition that payment had been duly demanded, and not a new cause of action for the introduction of which plaintiff should be taxed with costs previously accrued.

3.—County Bonds—Excessive Issue—Refunding.

An issue of county bonds in excess of the amount legally authorized by the taxable values, was not illegal in toto; but could be refunded by the commissioners court, under the Act of May 3, 1893, in bonds valid if not in excess.

4.—County Bonds—Certificate of Attorney-General.

If it should be conceded that the Attorney-General has no authority to certify county bonds (Act of April 29, 1893) unless presented to him by the officers charged with the management of the fiscal affairs of the county, the act of presentation was a ministerial one, and not required to be performed by the county officers in person, and might, it seems, be authorized by them to be done by another.

5.—Same—Innocent Purchaser—Estoppel.

Where county bonds, otherwise duly issued and delivered, were certified by the Attorney-General as having been "submitted to me for examination in accordance with the requirements of chapter 64 of the acts of the Twenty-third Legislature of Texas, approved April 29, 1893," and by him duly appproved, an innocent purchaser had the right to rely on that statement of the certificate, and the county was estopped from questioning its sufficiency on the ground that the presentation was not by its officers.

6.—County Bonds—Certificate Procured by Fraud.

The failure to show that the county commissioners had passed a resolution repudiating the bonds, in laying the facts before the Attorney-General to secure his certification of them, was not sufficient to show fraud in procuring his certificate, in the absence of evidence that he had no information of the fact from other sources.

7.—County Bonds—Repudiation by Resolution.

A county which has issued its bonds and received a valuable consideration, has no right to repudiate them by resolution of the commissioners court, and it was no fraud to fail to disclose the existence of such resolution to the Attorney-General in procuring his certification of the bonds.

Appeal from the County Court of Travis County. Tried below before Hon. Geo. Calhoun.

*A. L. Camp* and *A. S. Hawkins,* for appellant.

*Moursund & Moursund,* for appellee.

KEY, ASSOCIATE JUSTICE.—This suit was instituted by Gillespie County against Martin County to recover upon certain interest coupons attached to road and bridge bonds Nos. 3, 4, and 5, issued by Martin

County. The bonds were dated April 10, 1894. They were approved by the Attorney-General November 17, 1897, and were registered by the Comptroller the day following. They were refunding bonds issued in lieu of certain road and bridge bonds issued in July, 1885.

The original series of bonds amounted to $6000, and were excessive, because the taxable values of the county at that time would not justify the issuance of more than $4000 of road and bridge bonds. The record does not show that the amount of refunding bonds actually issued exceeded $4000.

James R. Masterson and S. K. McIlhenny became the owners of four of the original series of bonds, each for $1000, and amounting in the aggregate to $4000. It was not shown that Martin County received no consideration for the four bonds referred to; and the presumption is that they rested upon a valuable consideration.

February 12, 1894, Masterson and McIlhenny made an arrangement with the Commissioners Court of the county, which resulted in the issuance by the county of eight bonds for $500 each, bearing interest at the rate of 6 per cent per annum, which eight bonds were delivered to Masterson and McIlhenny in lieu of and exchange for the four bonds of date July, 1885; and the last named bonds were canceled by the Commissioners Court of Martin County. Thereafter Martin County paid interest on the refunding bonds held by Masterson and McIlhenny up to and including the year 1895.

February 10, 1896, the Commissioners Court of the county entered an order reciting the fact that it had obtained legal advice to the effect that both issues of bonds were illegal and repudiating the same. In 1897, Masterson and McIlhenny sold the refunding bonds held by them to M. S. Swain for $2500, and Swain procured from the county clerk of Martin County a certified copy of the order made and entered of record by the Commissioners Court of Martin County, February 12, 1894, authorizing the issuance of the refunding bonds, and levying the necessary tax to pay interest and provide a sinking fund, which, together with the bonds and the certificate of the Comptroller showing the taxable values of Martin County, he presented to the Attorney-General. And thereupon the Attorney-General approved said refunding bonds, and made the certificate required by the Act of April 29, 1893.

Thereafter, on November 27, 1897, the county judge of Gillespie County, acting under authority from the Commissioners Court of that county, purchased from Swain Nos. 3, 4 and 5 of the refunding bonds referred to, and paid therefor $1510 out of the permanent school fund of Gillespie County. At that time neither the county judge nor any of the county commissioners of Gillespie County had any knowledge or information of the matters relied on by Martin County to show the invalidity of the bonds. At the time Gillespie County purchased the bonds all the coupons then due had been detached. Those that had not been taken up by Martin County had been removed by Swain or some one else after they came into his possession.

The County Court rendered judgment for Gillespie County for the amount sued for, and Martin County has appealed.

We shall not undertake to discuss all the questions presented in appellant's brief. The plaintiff's original petition alleged, in general terms, that demand had been duly made by plaintiff for payment of the debt sued for; and thereafter, in an amended petition, the plaintiff alleged presentment of the coupons to the Commissioners Court of Martin County, and the refusal of that court to pay the same.

It is contended that the amended petition set up a new cause of action, and that the costs accruing up to that time should have been taxed against Gillespie County. This contention is overruled. We are inclined to the view that the obligations sued on, being in the form of negotiable instruments, are not such claims as the statute requires to be presented to the Commissioners Court before suing thereon. Furthermore, the original petition having alleged that demand for payment had been duly made, we think the amendment averring presentment to the Commissioners Court was an enlargement of the allegation in the original petition, and not the statement of a new cause of action. Townes on Texas Pleading, 314; Cotter v. Parks, 80 Texas, 542.

While the excess in the original bonds was unauthorized and not collectible, the bonds were not illegal in toto; and therefore, the Commissioners Court of Martin County was authorized, under the Act of May 3, 1893, to refund said bonds to the extent of their validity. That is to say, for such amount as the county was originally authorized to issue; and the refunding bonds, not being in excess of that amount, were valid, if issued in the manner prescribed by the statute. Nolan County v. State, 83 Texas, 197.

It is contended, however, that the statute referred to requires the certificate of the Attorney-General and registration in the Comptroller's office to complete the issuance of such bonds; and that the Attorney-General has no authority to certify to such bonds, unless they are presented to him by the officers charged with the management of the fiscal affairs of the county. If this construction of the statute be conceded, we are, nevertheless, of the opinion that it can not avail Martin County in this case. In the first place, while the county judge testified that he did not authorize anyone to present the bonds to the Attorney-General for approval, it was not shown that the county commissioners did not do so, verbally or otherwise. Presenting bonds to the Attorney-General for approval is a ministerial act, and we do not think the Legislature intended to require the county officers to perform that act in person. But conceding that no officer of Martin County gave any direct authority for the presentment of the bonds to the Attorney-General, the fact remains that the Commissioners Court of that county authorized the issuance of the bonds, levied the tax required for their payment, caused the bonds to be signed by the proper officers of the county and delivered to Masterson and McIlhenny; thereby putting it in their

power, and in the power of their assignees, to present the bonds to the Attorney-General and invoke his action thereon. And the certificate of that officer, after describing the bonds, says—"have been submitted to me for examination in accordance with the requirements of chapter 64 of the Acts of the Twenty-third Legislature of Texas, approved April 29, 1893." By the terms of the act referred to, the certificate of the Attorney-General is admissible as evidence, and cuts off all defenses, except forgery and fraud. Now, as Martin County placed it in the power of third persons to present the bonds to the Attorney-General for approval, and as he stated in his certificate that they were submitted to him in accordance with the requirements of the statute, we think the officers of Gillespie County had the right to rely upon that statement, and that Martin County is estopped from denying its truth. In other words, we hold that Gillespie County, under the facts disclosed by the record, is entitled to protection as an innocent purchaser. Citizens Bank v. City of Terrell, 78 Texas, 457.

The further contention is urged that the bonds and coupons are invalid on account of fraud. It is not claimed that any deceit was practiced upon the officers of Martin County in procuring them to issue the bonds, nor is it denied that Martin County received a valuable consideration for the original bonds, in lieu of which the latter were issued. The contention is that Swain knew that Martin County had repudiated the bonds, and failed to apprise the Attorney-General of that fact, and thereby perpetrated the fraud.

We are unable to sanction this contention for two reasons: In the first place, conceding that the proof shows that Swain failed to make the disclosure referred to, the Attorney-General's testimony was not taken, and it was not shown that as a matter of fact he was without information derived from other sources of Martin County's attempted repudiation. But, in the second place, if Martin County received a valuable consideration for the original bonds, in lieu of which the refunding bonds were issued, it had no right to repudiate the refunding bonds; and it was not fraud on it, the Attorney-General or anyone else for Swain to fail to advise the Attorney-General of the attempted repudiation.

We find no error in the record and the judgment is affirmed.

*Affirmed.*