STATE EX REL. RANKIN, ATTORNEY GENERAL, PLAINTIFF, *v.*
AMERICAN BANK & TRUST CO., DEFENDANT.

JENSEN, TRUSTEE, APPELLANT, *v.* SPRINGHORN, RECEIVER,
RESPONDENT.

(No. 5,911.)

(Submitted May 27, 1926. Decided June 15, 1926.)

[247 Pac. 336.]

*Banks and Banking—Insolvency—Bills and Notes—Pledges—*
*Unauthorized Sale by Pledgee—Effect on Claim of Buyer*
*Against Insolvent Bank—Statutes and Statutory Construc-*
*tion.*

Banks and Banking—Insolvency—Bills and Notes—Pledges—Pledgee
not Authorized to Sell, but may Only Collect on Maturity.
1. Under section 8312, Revised Codes of 1921, *held* that where a
bank had pledged to another bank promissory notes owned by it,
as security for indebtedness due, the latter bank was without
authority to sell the collateral upon insolvency of the former, but
was bound to hold and collect it when due and apply the pro-
ceeds to the payment of the debt secured.

Same—Insolvency—Disallowance of Claim of Buyer of Pledged Notes
Sold Contrary to Law Proper, When.
2. A bank, before becoming insolvent, to secure an indebtedness
of $70,000 due another bank, pledged as security for the debt
negotiable notes of a face value much greater than the amount of
the debt, they being indorsed and delivered by it unconditionally
before maturity. After the debt had been reduced to $40,000
the creditor bank sold the remaining securities for $50,000 with-
out, however, applying that amount to the debt. They were
thereafter again sold for $41,000, and the purchaser after having
collected $42,000 presented a claim to the receiver of the debtor
bank amounting to $137,855.62 as due on the notes not collected,
for allowance, who rejected it. *Held,* that the district court, upon
petition to it for allowance of the claim, properly denied it.

Statutory Construction—Statute of Another State—Failure to Plead or
Prove—Presumption—Rule.
3. Where a statute of another state is invoked by a party but
neither pleaded nor proved, the presumption obtains that the
statute of that state on the subject is the same as that of
Montana.

Promissory Notes—Collateral—Limit of Recovery Against Indorser.
4. An indorsement of negotiable paper by way of collateral se-
curity does not authorize any recovery against the pledgor beyond
the amount due upon the principal debt.

3. Presumption as to foreign statute, see note in 113 **Am. St. Rep.**
880. See, also, 25 R. C. L. 950.
4. See 21 R. C. L. 653.

Same—Pledges—Contract Under Which Pledge Made not Introduced in Evidence—Presumption.

5. Where the contract under which a bank delivered negotiable paper as security for a debt due the pledgee which was thereafter sold by the latter contrary to the provisions of section 8312, Revised Codes of 1921, was not put in evidence in a proceeding against the receiver of the pledgor bank by the purchaser to have his claim against the bank allowed, it will be presumed that the contract was not in contravention of the statute.

---

[1, 2]    Pledges, 31 **Cyc.**, p. 866, n. 46; p. 867, n. 48; p. 872, n. 24, 25; p. 873, n. 26.

[3]    Evidence, 22 **C. J.**, sec. 87, p. 151, n. 92; p. 154, n. 6.    Pledges, 31 Cyc., p. 883, n. 36.

[4]    Pledges, 31 **Cyc.**, p. 885, n. 64.

[5]    Appeal and Error, 4 **C. J.**, sec. 2666, p. 737, n. 58.

*Appeal from District Court, Cascade County; Stephen J. Cowley, Judge.*

RECEIVERSHIP proceeding by the State, on the relation of Wellington D. Rankin, Attorney General, against the American Bank & Trust Company of Great Falls, Montana, wherein S. R. Jensen, trustee, petitioned for allowance of a claim opposed by A. W. Springhorn, receiver. From an order denying the petition, petitioner appeals. Affirmed.

*Messrs. Maddox & Church,* and *Mr. A. H. Gray,* for Appellant, submitted a brief; *Mr. Gray* argued the cause orally.

*Messrs. Hurd, Rhoades, Hall & McCabe,* for Respondent, submitted a brief; *Mr. E. J. McCabe* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

On May 1, 1925, the appellant, S. R. Jensen, filed his duly verified petition in the above-entitled cause for an order of the court allowing his claim as a creditor of the American Bank & Trust Company, an insolvent banking corporation, in process of liquidation through intervention of a regularly appointed and qualified receiver. After issue joined by answer, proofs were submitted to the court and the appellant's petition denied. The appeal is from the order denying his petition.

It appears that the American Bank & Trust Company of Great Falls, a Montana banking corporation, closed its doors on December 3, 1920, because of insolvency, and thereafter A. W. Springhorn was, on March 1, 1921, duly and regularly appointed and qualified as receiver of such bank, which position he has ever since held and now holds. Among other creditors, the bank was indebted to the New York Trust Company of New York City, N. Y., in the sum of $70,000 at the time it discontinued business. Such indebtedness had its inception May 22, 1920, and was evidenced by a promissory note executed by the American Bank & Trust Company, secured by a large number of miscellaneous negotiable notes receivable, owned, and held by the American Bank & Trust Company, including the notes now held by the appellant upon which his claim is based. The notes so pledged as collateral security for the payment of the indebtedness were all indorsed and delivered unconditionally by the American Bank & Trust Company before maturity. The face value of this collateral security was apparently considerably greater than the amount of the indebtedness, for the aggregate balance of the notes now held by the appellant, and which furnish the basis of his claim amounts to $137,855.62.

On February 21, 1922, the court made the following order in the receivership proceedings: "It is ordered that all claims against the American Bank & Trust Company, asserted by creditors or claimants, must be presented to the receiver thereof on or before the 31st day of May, 1922, and that no claim presented after said date to said receiver shall be allowed by him." This order was duly published as notice to creditors of the insolvent bank, and pursuant thereto, within the time limit so established, the New York Trust Company regularly filed its claim for the principal amount of the indebtedness due it, *viz.* $70,000. This was later reduced to the sum of $40,000 prior to the sale of the collateral security remaining in its possession. The New York Trust Company retained possession of all the collateral notes upon which it had not realized

by collection until February 1, 1922, when it sold that which remained at public auction for $50,000 and made delivery thereof to the purchaser.

One Harry J. Harding made purchase thereof, and later, on February 17, 1922, he sold the notes to the Liberty Industrial Corporation, which, in turn, sold them, on August 18, 1923, after their maturity, to the appellant Jensen. The amount which the New York Trust Company received upon the sale of the remaining collateral notes made by it to Harding was never applied on the principal indebtedness. The amount which the appellant paid for all these notes appears to have been about $41,000. He testified: "I cannot tell you how much has been received on all the notes purchased from the Liberty Industrial Corporation, but we have collected more than we paid out. Up to this, time, we have collected more than $42,000."

Before filing the petition herein the appellant had filed a claim with the receiver for allowance of like amount in February, 1925, which was by the latter rejected in March, 1925 Other claims made by creditors against the insolvent bank have been allowed by the court upon presentation thereof subsequent to the time limit fixed by the order and in the published notice to creditors. So far as the record discloses, the American Bank & Trust Company is still indebted to the New York Trust Company in the approximate sum of $40,000 on an outstanding approved claim against the receiver. The assets of the insolvent bank, after the payment of 20 per cent in two dividends, amount to about $1,250,000. The appellant maintains right to share equally and ratably with other general creditors of the insolvent bank.

The only question involved is whether the court was in error [1, 2] in denying the appellant's petition. Our statutes provide: "A pledgee cannot sell any evidence of debt pledged to him, except the obligations of governments, states, or corporations; but he may collect the same when due." (Sec. 8312, Rev. Codes 1921.) "After a pledgee has lawfully sold prop-

erty pledged, or otherwise collected its proceeds, he may deduct therefrom the amount due under the principal obligation, and the necessary expenses of sale and collection, and must pay the surplus to the pledgor on demand.'' (*Id.*, sec. 8314.) ''Where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien.'' (*Id.*, sec. 8434.)

These statutory declarations are based on the rule applicable at common law. Generally: ''Collateral negotiable paper and other choses in action cannot be enforced by sale. A pledgee of commercial paper as collateral security cannot, in the absence of a special authority for that purpose, sell it upon the nonpayment of the debt, upon notice to the pledgor, either at public auction or private sale; but he is bound to hold and collect the same when it falls due and apply the money to the payment of the debt secured. The reason for this exception to the general rule in relation to the sale of property pledged is that such paper has no established market value, and it cannot be presumed it was the intention of the parties thus to deal with it.'' (Jones on Collateral Securities, 3d ed., sec. 651.)

The learned Justice Duer of the superior court of New York, as early as 1855, in discussing the question, said: ''What we have now said would suffice for the decision of this case, but it is not our intention to pass over the far more important and interesting question, which the bill of exceptions distinctly presents, and to which the arguments of the counsel before us were principally directed, namely, whether the general rule that a creditor has an implied authority, where the contract is silent, to sell the property pledged to him as collateral security, if the debt remains unpaid, is applicable, not only where the pledge consists of stocks or merchandise, but equally, when it consists of promissory notes, or bills of exchange, or other choses in action; or whether, in respect to these, the authority implied is not limited to the collection of the securities, and the use of the necessary means to enforce their payment?

**76 Mont.—29**

That such, in these cases, is the only authority that can be implied, was the opinion of the Chief Justice upon the trial, and it was mainly upon this ground that he directed a verdict for the plaintiff. He adheres to this opinion; and, after some hesitation and doubt, I concur with him in holding that it is a true expression of the law that we are bound to declare.

"Although the broad terms in which the general rule is laid down, both by Chancellor Kent and by Mr. Justice Story (2 Kent's Com., pp. 582, 583; Story on Bailments, sec. 310), seem to warrant the inference that the authority of the pledgee to sell is coextensive with the power of the debtor to create the pledge, and consequently embraces every species of property which is a legitimate subject of the contract, it is nevertheless certain that there is no reported case in which the doctrine has been carried to this extent. There is no adjudication that a sale by a pledgee of evidences of debt, created by individuals, can be justified, otherwise than by an express authority; and when we inquire into the reasons upon which the modern rule is founded, and by which alone it can be defended, it will at once be seen that to a sale of this character they are wholly inapplicable, and that, by sustaining an authority to make the sale, we should open a wide door to imposition and fraud." (*Wheeler* v. *Newbould,* 5 Duer (N. Y.), 29.)

And in an early California case (1869), in discussing the question as to whether a different rule is applicable to negotiable instruments than to other species of property, it is said: "The argument for the respondent on this point is founded chiefly on considerations of public policy. It is said that to permit a sale of such securities would often, and perhaps generally, result in a ruinous sacrifice, greatly injurious to the debtor, and equally so to the creditor, unless he should avail himself of his superior information in respect to the solvency of the maker of the paper, to purchase it at the sale for less than its value, which would be a great hardship upon the pledgor; that a sale of the paper is not necessary to enable the pledgee to make it available for the satisfaction of his

demand, inasmuch as he is clothed with the necessary power to enable him to enforce the collection of the security pledged; which is all that the pledgee can reasonably demand.'' (*Donohoe* v. *Gamble,* 38 Cal. 340, 99 Am. Dec. 399.)

The pleadings are silent with respect to the laws of New [3]    York regulating the sale of such negotiable instruments so held in pledge, and the only proof respecting the same is the testimony of a lay witness that the notes in question were sold ''in accordance with the terms of the note and with the laws of the state of New York.'' Neither the laws of New York nor the principal contract were offered in evidence. In the absence of either pleading or proof as to the laws of New York regulating the sale of such evidences of indebtedness held in pledge, it will be presumed that the statute of that state is the same as our own. (22 C. J. 151–154, and notes.)

Therefore, since the pledgee could only collect on the collateral notes at maturity and apply the amount so received on the principal until discharged, the sale of the security did not carry with it an independent liability on the part of the pledgor by reason of its indorsement. ''In no event, even under the law merchant, could an indorsement of negotiable [4]    paper by way of collateral security authorize any recovery against the pledgor beyond the amount remaining due upon the principal debt.'' (*Haber* v. *Brown,* 101 Cal. 445, 35 Pac. 1035.)

It is not necessary in the instant case for us to determine [5]    whether the statute prohibiting the sale of such character of securities expresses a general policy of the law, or is alone for the benefit of the pledgor. The principal contract is not before us, and therefore, whether the pledgor may have thereby attempted to waive the protection afforded it by the statute or not, we can only surmise from the statement of the witness. If the statute is intended for the protection of the pledgor alone, then it is of the utmost importance in making an adjudication of the rights of the parties to have the contract in evidence. In the absence of such evidence, it will be presumed

that the contract is not in contravention of the terms of the statute.

The order is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, STARK and MATTHEWS concur.