KALMAN, RESPONDENT, *v.* TREASURE COUNTY ET AL., APPELLANTS.

(No. 6,381.)

(Submitted February 14, 1929. Decided March 6, 1929.)

[275 Pac. 743.]

*Mr. C. L. Harris* and *Mr. George W. Farr*, for Appellants, submitted a brief; *Mr. Farr* argued the cause orally.

*Messrs. Loud & Leavitt*, and *Messrs. Oppenheimer, Peterson, Dickson & Hodgson*, of counsel, for Respondent, submitted a brief; *Mr. W. B. Leavitt* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff, as the owner and holder of interest coupons on a refunding bond issue of Treasure County, brought this action to recover the amount due thereon. The case was tried to the court sitting without a jury, after issue joined by the filing of an answer and reply. Judgment was rendered for plaintiff and against the defendant county. A motion for a new trial was denied, and the defendants appealed from the judgment.

It is contended by defendants that the complaint does not ██ state facts sufficient to constitute a cause of action, for the reason that it fails to allege that the claim based upon the coupons was ever presented to or acted upon by the board of county commissioners of Treasure county, as provided by sections 4604 and 4605, Revised Codes 1921. These statutory provisions have reference to unliquidated claims, demands, and accounts, and do not have application to bonds or interest coupons. That this is so is apparent from subdivision 3 of section 4811, Revised Codes of 1921, as amended by Chapter 79, Laws of 1923, which authorizes the county clerk to draw warrants in payment of all claims and demands against the county which have been "legally examined, allowed, and ordered paid by the board of county commissioners; also for all debts and demands against the county, when the amounts are fixed by law, and which are not directed to be audited by some other person or tribunal."

The claims in question were audited and approved when the bonds were authorized to be issued, and no further presentation to the board of county commissioners was necessary. Such is the holding of the courts under similar statutory provisions. (*County of Lincoln* v. *Luning*, 133 U. S. 529, 33 L. Ed. 766, 10 Sup. Ct. Rep. 363; *Parker* v. *Board of Supervisors*, 106 N. Y. 392, 13 N. E. 308; *Martin County* v. *Gillespie County*, 30 Tex. Civ. App. 307, 71 S. W. 421; *Board of Supervisors* v. *Randolph*, 89 Va. 614, 16 S. E. 722; *Commissioners' Court* v. *Rather*, 48 Ala. 433.)

Contention is also made by defendants that the complaint ██ is insufficient because it fails to allege that the coupons were presented to the county treasurer's office for payment. The complaint alleges that repeated demands were made upon the county treasurer for payment, and that the county treasurer asserted and notified plaintiff that the defendants would not pay the coupons or any part thereof. Under the circumstances, it was not necessary to allege an actual presentation of the coupons to the county treasurer's office for payment.

The remaining assignments of error are based upon the contention that the coupons in question were paid and that therefore it was error to enter judgment for plaintiff.

The record discloses that the bonds in question were issued in November, 1919, were of the par value of $71,000, were 71 in number, in denomination of $1,000 each, and bore interest at the rate of five and one-half per cent, payable semi-annually. The bonds and the interest coupons attached thereto were made payable to bearer, "at the First National Bank in the city of St. Paul, Minnesota." The bonds were sold and delivered in April, 1919, to H. P. Wood, M. W. Matteson, and C. O. Kalman, a copartnership which was subsequently dissolved and its assets taken over by plaintiff. The interest involved in this action is that accruing on January 1, 1922, amounting to $1,952.50. Prior to January 1, 1922, 44 of the bonds had been sold to customers of plaintiff and the remaining 27 were owned by plaintiff on that date. On December 13, 1921, in harmony with a custom and practice theretofore followed with reference to interest coupons of other bond issues, the plaintiff wrote a letter to the First National Bank of St. Paul relative to the payment of interest on this issue of bonds, saying: "If these funds are not received by the first we shall be glad to be advised, but, if coupons are presented before funds are received, you may pay them and charge our account as per letter of Jan. 10, 1918." The letter of January 10, 1918, was a general letter relating to all bond issues handled by the plaintiff and his predecessor, which recited in part: "We will, therefore, submit to you before the first of each month a list of coupons due and payable at your bank and we ask that each coupon be paid by you whether funds have reached you or not and we authorize you to charge our account with any such payments made."

The coupons were presented to the First National Bank of St. Paul for payment by the various holders between January 3 and January 26, 1922. They were paid by the bank, and plaintiff's account on January 17, 1922, was charged with

the full amount due on the coupons as of January 1, 1922. Subsequently the canceled coupons were delivered to plaintiff by the First National Bank of St. Paul.

On December 31, 1921, the county treasurer of Treasure county drew a check, dated January 2, 1922, drawn on the Treasure State Bank of Hysham, payable to the order of the First National Bank of St. Paul, for $1,952.50, and mailed it to the First National Bank of St. Paul for the purpose of paying these interest coupons. This check was received by the First National Bank of St. Paul on January 3, 1922, and on the same day it was indorsed to the Helena Federal Reserve Bank by the First National Bank of St. Paul and by it mailed to the Federal Reserve Bank of Helena. The Federal Reserve Bank received the check on January 5, and on the same day mailed it to the Treasure State Bank of Hysham. On January 7 the check was paid by the Treasure State Bank by marking it "Paid" and by charging the same to the account of the county treasurer and by the issuance of a draft drawn on the Bank of Commerce of Forsyth and payable to the Federal Reserve Bank of Helena. The draft was forwarded to the Federal Reserve Bank at Helena on January 7. It was presented for payment and payment refused by reason of insufficient funds, and, before presentation a second time the Treasure State Bank, on January 13, failed and closed its doors. The First National Bank of St. Paul was notified of this by telegram from the Federal Reserve Bank at Helena on January 17. At the time the check of the county treasurer was presented by the Federal Reserve Bank to the Treasure State Bank there was a balance in the Treasure State Bank to the credit of Treasure County in the sum of $34,236.45.

The issue of bonds in question was sent by the county treasurer of Treasure county to the First National Bank of St. Paul to be delivered to the purchaser upon payment being made to the bank therefor. Interest accrued on this bond issue prior to that accruing on January 1, 1922, was paid by

the First National Bank of St. Paul with funds forwarded by the treasurer of Treasure county.

It is contended by the defendants that, by reason of these facts, the First National Bank of St. Paul was the agent of the plaintiff, and that it follows that, because of the decision in the case of *Jensen* v. *Laurel Meat Co.*, 71 Mont. 582, 230 Pac. 1081, the county has discharged the obligation here sued upon. The plaintiff, on the other hand, contends that the First National Bank of St. Paul was the agent of the county, and for that reason the *Jensen Case* has no application. The defendants, in concluding that the First National Bank of St. Paul was the agent of the plaintiff, take the position that the county has no authority under the law to appoint an agent outside of the state and to entrust the moneys of the county with such agent, and that section 4623, Revised Codes 1921, contemplates that the interest on the bonds must be payable at the county treasurer's office and not elsewhere.

The authorities are divided on the right of the county, in the absence of a statute expressly authorizing it to do so, to make principal or interest on bonds payable out of the state. In Illinois it has been held that this may not be done. (*People ex rel.* v. *Tazewell County*, 22 Ill. 151.) In that state the clause providing for payment outside the state is held not to affect the validity of the bonds, but will be treated as surplusage. (*Johnson* v. *County of Stark*, 24 Ill. 91.) However, the weight of authority holds that a county or city may provide for the payment of its bonds outside the state. (Daniels on Negotiable Instruments, 6th ed., sec. 1497; *Thompson* v. *Lee County*, 3 Wall. (U. S.) 327, 18 L. Ed. 177; *Lynde* v. *County of Winnebago*, 17 Wall. (U. S.) 13, 21 L. Ed. 272; *Myer & Stucken* v. *City of Muscatine*, 1 Wall. (U. S.) 384, 17 L. Ed. 564; *Board of Supervisors* v. *Galbraith*, 99 U. S. 214, 25 L. Ed. 410; *Town of Lancaster* v. *First National Bank*, 80 S. C. 547, 61 S. E. 1025), and that such a provision is obligatory on the county (*Skinker* v. *Butler County*, 112 Mo. 332, 20 S. W. 613).

In the case of *Myer & Stucken* v. *Muscatine,* supra, the court, speaking through Mr. Justice Swayne, in discussing the effect of a clause in bonds of a city making them payable in a city outside of the state where issued, said: ''It was according to the general usage to make such bonds and coupons payable in the City of New York. It added to the value of the bonds and was beneficial to all parties. No legal principle forbids it. The power of a municipal corporation to make any contract, does not depend upon the place of performance, but upon its scope and object. A city, authorized to establish gas works and water works, and to gravel its streets, may buy water, coal and gravel beyond its limits and agree to pay where they are found or elsewhere. The principal power, when expressed, draws to it, by necessary implication, the means of its execution. This is a settled rule in the construction of all grants of authority, whether to governments or individuals. If the subject admitted of doubt, we should hold that the city, having acted upon its own construction, and drawn in others to take the securities and advance their money upon it, is now concluded from denying that construction to be the true one.''

We are of the opinion that a county in Montana has the right to make principal and interest of its bonds payable in a city outside the state of Montana.

Under the facts appearing in this case, was the First National Bank of St. Paul the agent of the plaintiff or the defendants?

The interest coupons in question are made payable to bearer; hence pass by delivery and possess all the qualities and incidents of commercial paper. (*Thompson* v. *Lee County,* supra.) It is the universal rule that, where commercial paper is made payable at a particular bank, such bank is the agent of the maker and not the holder, the holder not having deposited it at the designated bank for collection. (*Ward* v. *Smith,* 7 Wall. (U. S.) 447, 19 L. Ed. 207; *State National Bank* v. *J. J. Hyatt & Co.,* 75 Ark. 170, 112 Am. St.

Rep. 50, 5 Ann. Cas. 296, 86 S. W. 1002; *St. Paul National Bank* v. *Cannon*, 46 Minn. 95, 24 Am. St. Rep. 189, 48 N. W. 526; *First National Bank of Omaha* v. *Chilson*, 45 Neb. 257, 63 N. W. 362; *Williamsport Gas Co.* v. *Pinkerton*, 95 Pa. 62; *Kerbaugh* v. *Nugent*, 48 Ind. App. 43, 95 N. E. 336; *Dillingham* v. *Parks*, 30 Ind. App. 61, 65 N. E. 300; *Chapman* v. *Wagner*, 1 Neb. (Unof.) 492, 96 N. W. 412; *Iowa Loan & Trust Co.* v. *Seaman*, 203 Iowa, 310, 210 N. W. 937, 212 N. W. 487.)

Under the facts of this case, the holders of the coupons did not deposit them with the First National Bank for collection. They were simply surrendered for payment. If the bank had not received the money from the county, it was under no obligation to the holders of the coupons upon presentation. To avoid the consequences of delay in the payment of the coupons to its customers, the plaintiff, in accordance with a custom theretofore established, asked the bank to pay the coupons when presented, and if it did not have the funds from the county with which to make payment, to charge plaintiff's account therewith. This arrangement was nothing more than an arrangement whereby plaintiff purchased the coupons from the holders thereof through the First National Bank of St. Paul as agent for that purpose, in the event that the county did not have funds in the bank for their payment. This agency, under the facts presented in this case, extended no further, however, than for the purpose of purchasing the coupons for plaintiff and then only in the event that the county had not furnished the money for their payment when presented.

The bank therefore being the agent of the county for the collection of the money with which to pay the interest coupons, it remains to determine whether payment of the interest coupons has been accomplished by the county because of the acceptance by the First National Bank of St. Paul of the check of the county treasurer or because the Federal Reserve

Bank of Helena accepted in payment of the check a draft drawn by the Hysham bank on the Bank of Commerce of Forsyth instead of cash.

The rule is well established that, in the absence of an agreement to the contrary, acceptance of a check is conditional payment only, dependent upon its payment. (*United States National Bank of Red Lodge* v. *Shupak*, 54 Mont. 542, 172 Pac. 324; *Jensen* v. *Laurel Meat Co.*, supra; *Blackwelder* v. *Fergus Motor Co.*, 80 Mont. 374, 260 Pac. 734.) There is nothing in the record to indicate that there was any understanding or agreement that the check would be regarded as actual payment. Defendants contend that such an agreement is to be implied from the language appearing in the letter written by the St. Paul bank in acknowledgment of the check, wherein it is said: "We acknowledge receipt of your remittance under date of December 31, in the amount of $1,952.50 in payment of interest on Treasure county bonds." This language, however, is not inconsistent with the idea that the check was accepted as conditional payment only. An agreement that a check is to be received in absolute payment will not be implied from the fact that a receipt was given for the check. (*Cleve* v. *Craven Chemical Co.*, 18 Fed. (2d) 711, 52 A. L. R. 980.)

It follows that the giving of the check by the defendant county to the First National Bank of St. Paul did not operate as payment of the sum due on the interest coupons, unless the check has been paid. Whether the check has been paid or not depends upon whether acceptance by the Reserve Bank of the draft drawn on the Bank of Commerce of Forsyth, and the marking of the check as "paid" by the Hysham bank and the debiting of the county treasurer's account with the amount of the check operated as payment of the check.

So far as the county is concerned, the check was, by this series of acts, paid. (*Jensen* v. *Laurel Meat Co.*, supra.) But holding, as we do, that the St. Paul bank was the agent of the defendant county, payment of the check to the St. Paul

bank does not absolve the county of liability to the holders of the interest coupons.

We are of the opinion that the district court was correct in finding that the interest coupons in question have not been paid by Treasure county and in entering judgment for plaintiff.

Defendants contend that it was error to allow interest to plaintiff at the rate of eight per cent per annum from the time the interest coupons became due, without filing a claim with the county. As heretofore stated, there is no necessity for presenting a claim for a liquidated demand such as this. When these interest coupons became due they started to draw interest at the legal rate of eight per cent per annum. (Sec. 7725, Rev. Codes 1921.) The amount of the demand was one fixed by law, and there was no necessity for presenting a claim to the county therefor. The following cases, among others, have held that past-due interest coupons bear interest: *Hughes County* v. *Livingston,* 104 Fed. 306, 43 C. C. A. 541; *County of Scotland* v. *Hill,* 132 U. S. 107, 33 L. Ed. 261, 10 Sup. Ct. Rep. 26; *City of Aurora* v. *West,* 7 Wall. (74 U. S.) 82, 19 L. Ed. 42; *Cairo* v. *Zane,* 149 U. S. 122, 37 L. Ed. 673, 13 Sup. Ct. Rep. 803.

It has been held that the rate of interest allowable is that prescribed by the laws of the state where the coupons were made payable. (*Cairo* v. *Zane,* supra; *Hughes County* v. *Livingston,* supra.) The coupons on their face were made payable in Minnesota, but they were also payable at the county treasurer's office, and we think the laws of this state control the interest rate. But whether the laws of this state or of Minnesota govern the rate of interest is immaterial in this case, for, in the absence of pleading or proof as to the Minnesota law on the subject, it will be presumed to be the same as that of this state. (*State ex rel. Rankin* v. *American Bank & Trust Co.,* 76 Mont. 445, 247 Pac. 336; *Springhorn* v. *Roberts,* 77 Mont. 395, 250 Pac. 1112.) It was proper,

therefore, to allow interest on the overdue coupons at the legal rate of eight per cent per annum.

Counsel for defendants contend also that mandamus and ▇▇▇ not an action to recover a money judgment was the remedy of plaintiff. The case of *Greeley* v. *Cascade County*, 22 Mont. 580, 57 Pac. 274, is relied upon in support of this contention. Mandamus is a proper remedy when there is not a plain, speedy, and adequate remedy at. law. (Sec. 9849, Rev. Codes 1921.) It lies to compel "the performance of an act which the law specially enjoins as a duty." (Sec. 9848, Id.) The county treasurer was commanded by statute to pay the interest upon the bonds in question when due. (Sec. 4623, Id.) A fund was created to pay the bonds and interest. (Sec. 4622, Id., as amended by Chapter 21, Laws of 1923, and Chapter 99, Laws of 1925.)

The *Greeley Case* presented facts not present in this case. In the complaint in that case it was alleged that the check given in payment of the warrant in question was not paid, and that the defendant county, after the suspension of the bank, presented a claim against the bank for all the funds deposited to the credit of the county treasurer, and that the county collected and retained dividends paid by the bank or the receiver upon the entire deposit, and that the defendant county retained the whole of the money. The court in that case used this language: "Certainly, if the treasurer is in funds, mandamus against him, and not an ordinary action upon the warrant, is a proper remedy." In this case there is no showing that the county was in funds at the time this action was commenced. The record discloses that it had on deposit in the Hysham bank, at the time the bank suspended business, $34,236.45, after deducting the amount of the check given in payment of the interest coupons in question. How much of this money was actually lost by the county does not appear. Also, it is not shown how much of this fund belonged to the interest and sinking fund raised for the retirement of the bond issue here involved. In the absence of any showing that

the county was in funds at the time this action was commenced, it was proper to entertain it.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN and FORD concur.

Rehearing denied March 28, 1929.