## DILLINGHAM ET AL. v. PARKS ET AL.

[No. 3,959. Filed November 21, 1902.]

BILLS AND NOTES.—*Note Payable in Bank.—Deposit by Maker.— Payment.*—One who had assumed the payment of a mortgage note payable in bank as a part payment of the purchase money, executed a note and mortgage to such bank for the purpose of paying the note and interest, and deposited the money with the bank for the payment thereof. The bank notified the holder of the note that the money was at the bank for the payment of the note, and the holder having possession of the note demanded payment at the bank, but at the same time notified the bank that the real estate mortgaged to the bank for the loan of the money so held by it had been conveyed to the mortgagor to defraud the grantor's creditors, of whom the holder was one, and that the title of the mortgagor would be attacked for such cause by these creditors; and, though the money remained in the bank, no tender of payment to the holder was made, and the holder brought suit upon the note and the mortgage by which it was secured. *Held,* that the transaction did not amount to a tender of payment within the meaning of §371 Burns 1901. *pp. 61–71.*

INTERNAL REVENUE.—*Instrument not Stamped Admissible in Evidence.*— The act of congress requiring revenue stamps to be placed upon certain documents, and providing that instruments not so stamped shall not be admitted or used in evidence in any court, applies to federal courts, and not to state courts. *pp. 71, 72.*

From Marshall Circuit Court; *A. C. Capron,* Judge.

Action by Condie M. Parks against Glenn Dillingham and others upon a promissory note and to foreclose a mortgage securing the same. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*J. D. McLaren,* for appellants.
*Charles Kellison,* for appellees.

BLACK, J.—The appellants, Harrison Dillingham, Robert H. Dillingham, Glenn Dillingham, and others, were sued by Condie M. Parks, appellee, upon a promissory note and a mortgage on real estate given to secure payment of the note. The material facts on which the controlling questions arise were stated in a special finding substantially as fol-

Dillingham v. Parks.

lows: Harrison Dillingham, appellant, on September 4, 1894, made the note in suit to the St. Joseph County Savings Bank for $2,000, due in five years, with interest at seven per cent. per annum, payable annually, the interest to maturity being represented by five coupon notes, one due each year on the 4th day of September, all the notes being made payable at said bank. At the same time the maker executed his mortgage on certain land in Marshall county, Indiana, to the payee to secure the payment of the note, which mortgage was duly recorded October 12, 1894. The bank, on January 21, 1895, sold the note and mortgage to James H. Matchett, and assigned the note, without recourse to him, in writing on the back of the note, and also assigned to him the mortgage, in writing on the back thereof, which assignment was recorded August 5, 1899. In the year of 1895, Matchett sold the note and mortgage to Condie M. Parks, appellee, the plaintiff, and assigned the note to him, without recourse, in writing on the back thereof. The mortgage was assigned, in writing on the back thereof, by Matchett to Parks, and the assignment was recorded August 15, 1899, the last mentioned assignment being stamped with a fifty cents United States internal revenue stamp. This suit was brought upon the principal note and the coupon note due September 4, 1899, and to foreclose the mortgage.

December 4, 1894, Harrison Dillingham, unmarried, conveyed the mortgaged land to Robert H. Dillingham, appellant, who by an agreement in the deed of conveyance assumed and agreed to pay the mortgage debt to the bank as part of the purchase money. January 28, 1899, Robert H. Dillingham and his wife, by warranty deed, conveyed the mortgaged land to Glenn Dillingham, appellant, who also assumed and agreed to pay the mortgage debt to the bank as part of the consideration for the land. A number of other persons who were made defendants held judgments rendered against Harrison Dillingham in the court below sub-

sequent to the execution and recording of the mortgage in suit, and after the conveyance of the mortgaged land to Robert H. Dillingham.    Immediately prior to June 6, 1899, Glenn Dillingham applied to one Snyder, agent at Plymouth, Indiana, of said bank, for a loan of $2,000 to be used and applied to the note and mortgage in suit, and offered as security for the loan a mortgage on the same land; and it was then agreed by Glenn Dillingham and the bank, through Snyder, that as security for the 'loan the bank should have a first lien on the land, executed by Glenn Dillingham, and that his title thereto should be and was a good and valid fee simple title.   Thereupon, pursuant to this agreement, on June 6, 1899, Glenn Dillingham executed his note to the bank, due in five years, and drawing six per cent. interest from September 1, 1899, and, to secure this note, his mortgage on said. land, to the bank, in which mortgage it was stated that it was executed to secure money borrowed. to pay the indebtedness here in suit. Snyder filed this mortgage for record June 6, 1899, and on the 21st of July, 1899, he delivered the note secured thereby to the bank, with instructions to hold the proceeds thereof, $2,000, and also $140 which Glenn Dillingham promised and agreed with Snyder to send to the bank, until the debt to the appellee Parks should become due, which was September 4, 1899, not counting days of grace, and with further instruction that on or about September 1, 1899, the bank should notify the appellee Parks of the fact that the amount due him on said note was at the bank,—the place of payment designated in the note.   The bank accepted said note of Glenn Dillingham for $2,000, and prior to September 1, 1899, received from him the $140 additional, and agreed to follow the instructions as to holding the sum of $2,140 until the note held by appellee Parks should become due, and as to notifying him that the money was at its said office to pay his said note.   Accordingly, on the receipt of said sum of $140, the bank set aside the sum

of $2,140 with which to pay the note held by appellee Parks, but made no entry thereof on any of the bank books; and on September 2, 1899, the cashier of the bank, one Tong, sent appellee Parks a telegram notifying him of the fact that such sum was at the bank with which to pay his said note, and the appellee Parks received this telegram September 3, 1899.

Before this telegram was so sent, appellee Parks went to the office of the bank and there met the president of the bank, to whom he stated that the conveyance made by Harrison Dillingham to Robert H. Dillingham, and that made by the latter to Glenn Dillingham were fraudulent, and that he, as a creditor of Harrison Dillingham, and other creditors of said Harrison, proposed to attack the conveyances in court, and to have them set aside, and that he and said other creditors had the evidence at command to make their attack successful, and that the bank could not deal with the land with safety. The bank's cashier, Tong, overheard parts of this conversation and thereby became advised that there was some controversy over the title of Glenn Dillingham to the mortgaged land, and that appellee Parks, for himself and others, was threatening to attack the title of the bank's mortgagor. The bank continued to hold said sum of $2,140, and on September 16, 1899, appellee Parks called at the bank, having the note and mortgage in suit with him, and demanded payment thereof from the cashier Tong, who responded that the president of the bank was out of town, which was true, and that he would be at the bank on the next day but one, and that he, the cashier, knew little about the business on which appellee Parks had come, and requested him to call again on the next day but one, being September 18, 1899, and to see the bank's president. To this, appellee Parks assented, and he returned September 18, 1899, to the bank, having with him the note and mortgage sued on, and also a written notice which he

handed to the cashier, informing him of its contents. This notice, set out in the finding, was addressed to the bank, and purported to notify it that certain creditors, named, of Harrison Dillingham were contending and would contend that the mortgaged land was the property of said Harrison, and subject to the payment of his debts, which were set forth by items, being six judgments against said Harrison rendered in the court below in favor of different persons, one on December 11, 1894, one December 21, 1894, and four on January 15, 1895; also a certain promissory note of said Harrison and one Jacob Beltz, dated September 10, 1891, payable to the order of the appellee Parks one year after date; also two other notes of said Harrison made before December 4, 1894, to another payee. It was stated in the notice that the several judgments, claims, and notes therein described were wholly unpaid, and owned by the parties named in the descriptions thereof, and the bank was further thereby notified that on the 4th of December, 1894, said Harrison conveyed the land by warranty deed to his son Robert H. Dillingham, and on the 28th day of January, 1899, he and his wife conveyed the land by warranty deed to Glenn Dillingham, also a son of said Harrison, and that these deeds were recorded, etc.; that both of them were made and executed by the several grantors without any valuable consideration, or if for any, for a grossly inadequate one, and were executed by the grantors for the purpose of cheating, hindering, and delaying said creditors of Harrison Dillingham, and that Robert and Glenn Dillingham each took and received the conveyance to him for the purpose of aiding and assisting in the commission of said fraud, and that, after his conveyance, Harrison Dillingham had had no other property subject to execution to pay said creditors, and had none at the time of this notice. The bank was further thereby notified that if it dealt with the land in question it did so at its own risk and peril. To

this notice were the signatures of two persons as attorneys for said creditors.

It was further found that the several notes and judgments described in the said notice were valid and existing claims against Harrison Dillingham, and were unpaid; that at the time of delivering this notice, appellee Parks saw the president of the bank and presented his note and mortgage and demanded payment of the president, to whom, also, immediately thereafter, he presented the notice and correctly stated to him what it was. The president did not read it, but, on hearing what it was, proposed to appellee Parks that they go to Plymouth, where the attorney of Parks and the agent and the attorney of the bank resided, and there endeavor to adjust matters. Parks consented, and the president took with him $2,140 in cash, and he and Parks went to Plymouth, where it was agreed between the bank and Parks that the matter might stand for a few days, during which the bank would make an effort to adjust the business with Glenn Dillingham, so that the bank might turn back to him the $140 and deliver to him the note and mortgage of June 6, 1899, and cancel the mortgage, and thereby escape further liability or annoyance in the matter. Glenn Dillingham refused to receive the $140 and his note and mortgage, and insisted that the debt to Parks was paid by the deposit of the $2,140 with the bank. On the 24th of December, 1899, Parks, by his attorney, again demanded payment of his note of the cashier of the bank during banking hours, at the bank, but had not withdrawn and did not withdraw said notice, and had not and did not abandon, or state to the cashier that he had abandoned, his determination to bring and prosecute the threatened suit to set aside said deeds, and to enforce payment of the debts, mentioned in the notice, out of the mortgaged land. No other request or demand for payment was made by Parks from the bank, and none was made on any other consideration or under any other circumstances than herein stated.

On the 18th of September, 1899, the bank had been holding the $2,140 in money solely for the use of Glenn Dillingham, and for the purpose of paying the note and mortgage held by appellee Parks on any proper demand; and prior to that date the bank had not refused unconditionally to pay the note and mortgage, but on receiving the written notice the bank's officers became fearful that the title of Glenn Dillingham to the mortgaged land might become involved in the threatened suits, and that the bank's mortgage might become imperiled thereby, and, that it might be protected, the officers of the bank, acting on the agreement made by the bank with Glenn Dillingham when the loan was solicited that it should have a first mortgage and a clear title to the land, refused to part with the $2,140, and continued to hold the same from that time for its own protection; but at all times since September 18, 1899, the bank has been ready and able to pay the money to Parks on the note and mortgage held by him, and would have done so but for the written notice, and his threat to bring an action in behalf of himself and the other creditors of Harrison Dillingham to subject the land to the payment of the debts described in the notice. The court also among its findings of facts stated that the service of the written notice on the officers of the bank, and the claim of Parks and said other creditors asserted therein, raised a cloud upon the title of Glenn Dillingham to the land, which title was not such as he had agreed the bank should have as its security.

It was found that no action had been commenced by appellee Parks or any of the other creditors of Harrison Dillingham named in the written notice to set aside said conveyance on the ground stated in the notice; that in August, 1899, an action was commenced in the court below in the name of David Kingerman against said Dillinghams and said bank seeking to set aside said conveyance, but it had not been diligently prosecuted, and it had no deterrent effect on the bank as to the payment of the note in suit,

which, it was found, would have been paid but for the threats and written notice aforesaid; that appellee Parks made the representations and threats to the bank, and served the written notice with the intent, and for the sole purpose, of preventing the bank from loaning the $2,000 to Glenn Dillingham to pay off the note sued on, which sum, with the $140, was the full amount due at the maturity of the note; and Parks knew that the sum of $2,140 was at the bank for the payment of his note before the maturity thereof, and he hoped and expected to prevent Glenn Dillingham from procuring the means to pay off the note and mortgage and Parks expected he would thus be able to foreclose his mortgage and obtain a sale to himself on foreclosure, and, by adding to the original amount a large sum in costs, expenses, and attorney's fees, he would prevent redemption from the sale, whereby he would become the owner of the land free from the claims of Harrison Dillingham's creditors. It was found that at no time, either before or since the commencement of this action, has the bank or Glenn Dillingham tendered payment of the note and mortgage in suit, or any part thereof; that the mortgage, executed by Glenn Dillingham to the bank, which was recorded, is still held by the bank, and it is unsatisfied of record and is junior to the mortgage in suit; that there was due on the note and mortgage in suit $2,475.22. The court stated conclusions of law in favor of the appellee Parks.

Giving the facts stated in the special finding a construction the most favorable to the appellants of which they are susceptible, they show that the person liable on the negotiable promissory note in suit by reason of his having assumed the payment thereof, whose land was bound as security therefor, caused the bank where the note was made payable to hold the amount of the note in money for the special purpose of paying the note therewith, and caused the bank to notify the holder, immediately before the ma-

turity of the note, that the money was at the bank for the payment of the note, and thereafter, while the money still remained there, the holder, having in his possession the note, which was not deposited with the bank for collection, demanded payment at the bank, but at the same time notified the bank that the real estate mortgaged to the bank for the loan of the money so held by the bank had been conveyed to the mortgagor to defraud the grantor's creditors, of whom the holder was one, and that the title of the mortgagor would be attacked for such cause by these creditors; and though the money remained in the bank, no tender of payment to the holder was made, and the holder brought suit upon the note and the mortgage by which it was secured.

The appellants, Harrison Dillingham and Robert H. Dillingham, each answered by general denial, and by a paragraph alleging payment by Glenn Dillingham. The answer of the appellant Glenn Dillingham consisted of a general denial and a paragraph setting up the payment of the money into the bank, and the notice thereof to the appellee Parks as constituting payment of the notes in suit before the commencement of the action. Our statute (§371 Burns 1901) provides: "In any action or defense, founded upon a bill or note, or other contract for the payment of money at a particular place, it shall not be necessary to aver or prove a demand at the place, but the opposite party may show a readiness to pay such demand at the proper place." The showing of readiness to pay the demand at the proper place, as provided in this statute, will not consitute a bar to the cause of action for the recovery of the debt, but may be set up, together with the bringing of the money into court, as a defense to the recovery of damages and costs, by way of showing tender. When a negotiable promissory note is deposited by the holder for collection at the bank at which it is made payable, the bank is thereby made the agent of the holder with authority to receive the money in

payment at maturity, and so long thereafter as the note so remains at the bank; but the fact that a note is made payable at a particular bank does not constitute it an agent of the payee or holder to receive for him the money in payment of the note.   Where the maker has no defense to the note, and has money on general deposit at such bank, it may, in this State, in good faith, apply such funds in payment of the note upon the presentation thereof by the holder at maturity, and may set off the amount so paid against the demand of the maker for the money so on general deposit.   *Bedford Bank* v. *Acoam,* 125 Ind. 584, 9 L. R. A. 560, 21 Am. St. 258.   It is not necessary, in order to give a right of recovery against the maker of a note payable at a particular bank, that it should be presented at the bank for payment.   The failure to make presentment at the bank does not relieve the maker from his promise to pay, but only relieves him from damages in case he is ready at the bank to pay, and there is no one there to receive the money.   Such facts are regarded as equivalent to a tender of the sum payable; and an answer showing such tender and payment of the money due into court will bar a recovery of interest and costs, but will not bar the cause of action on the note.

*Glatt* v. *Fortman,* 120 Ind. 384, was an action on a promissory note payable at a named bank in this State.   An answer was adjudged bad in which it was alleged that on the day the note became due the defendants, the makers, paid to the bank the principal and interest on the note and directed that the money so paid be applied to the payment of the note, and that at the time the money was placed in the bank the defendants did not know who were the holders of the note, and that long after the money was deposited the bank became insolvent.   In the opinion of the court, referring to the statute above quoted, it was said:  "As the law provides that the holder is not bound to present the note to the bank for payment in order to charge the maker,

it necessarily follows that money deposited in the bank can not be deemed to be deposited with the payee's agent. It is not placed there at his risk, but at the risk of the payor. The readiness to pay at the place designated constitutes a defense, if properly followed up, but the deposit of the money for the payee does not discharge the maker of the note. The obligation remains in force until the payment is made to the payee or his agent, and unless the note is in the hands of the bank it is not the payee's agent." When a bank receives from the maker of a promissory note made payable at such bank, or from one who has assumed the payment thereof, money to apply in payment of the note, the money will be regarded as taken and held by the bank as the agent of the maker or other person from whom it has been so received, and not as the agent of the holder of the note, unless made such by indorsement or deposit of the paper for collection. See Tiedeman, Com. Paper, §310; Edward, Bills and Notes (3d ed.), §594; Randolph, Com. Paper (2d ed.), §1119; *Wallace v. McConnell,* 13 Pet. 135, 10 L. Ed. 95; *Brabston* v. *Gibson,* 9 How. 262, 13 L. Ed. 131; *Ward* v. *Smith,* 7 Wall. 447, 19 L. Ed. 207; *Wood & Co.* v. *Merchants Savings, etc., Co.,* 41 Ill. 267; *Adams* v. *Hackensack Improvement Com.,* 15 Vroom (N. J.) 638, 43 Am. Rep. 406; *Indiana, etc., R. Co.* v. *Davis,* 20 Ind. 6, 83 Am. Dec. 303; *McCullough* v. *Cook,* 34 Ind. 290; *Hall* v. *Allen,* 37 Ind. 541.

The court overruled the objection of the appellant Glenn Dillingham to the introduction in evidence of the assignment of the mortgage by James H. Matchett to the appellee Parks, dated August 14, 1899, the ground of objection stated being that the revenue stamp upon the assignment was not sufficient. It is claimed in argument that as the mortgage at the time of this assignment secured the payment of the principal note for $2,000 and the last interest coupon note for $140,—in all $2,140, a revenue stamp for fifty cents upon the assignment was insufficient, and that

it should have had affixed to it United States revenue stamps amounting to seventy-five cents, under the war revenue act of congress of June 13, 1898, providing stamp duties on certain instruments, including an assignment or transfer of a mortgage, and declaring that an instrument, paper, or document required by law to be stamped, which has been signed or issued without being duly stamped, or with a deficient stamp, shall not be admitted or used as evidence in any court until a legal stamp or stamps, denoting the amount of tax, shall have been affixed thereto. We are not required to decide whether or not the assignment was sufficiently stamped as required by the war revenue act of 1898. The provision rendering the unstamped or insufficiently stamped instrument not competent evidence in any court must be regarded as applicable, not to state courts, but to federal courts only. *Knox* v. *Rossi,* 25 Nev. 96, 48 L. R. A. 305, 83 Am. St. 566; *Small* v. *Slocumb,* 112 Ga. 279, 37 S. E. 481, 53 L. R. A. 130, 81 Am. St. 50; *Richardson* v. *Roberts,* 195 Ill. 27, 62 N. E. 840; *Smith* v. *Hunter,* 33 Ind. 106; *Wallace* v. *Cravens,* 34 Ind. 534; *Prather* v. *Zulauf,* 38 Ind. 155. The case, it may be remarked, does not present the question as to the effect, if any, upon the instrument as to its competency as evidence which would result from the omission of the use of sufficient stamps with intent to evade the provisions of the statute.

We do not find any available error. Judgment affirmed.