## KERBAUGH v. NUGENT ET AL.

[No. 6,983.  Filed June 9, 1911.]

1. APPEAL.—*Failure to Present Questions.—Assignment of Errors.* —The failure of the appellant to question the sufficiency of an answer in his assignment of errors is fatal to the raising of any question thereon. p. 46.

2. APPEAL.—*Answer.—Special Findings.—Conclusions of Law.*— Where the special findings show the same facts as are set out

in an answer, the question of the sufficiency of the answer is unimportant, the exceptions to the conclusions of law raising the same questions. p. 46.

3.  BILLS AND NOTES.—*Payable in Bank.—Pleading and Proof.*—In an action on a note payable in bank, it is not necessary that the holder should plead and prove that the note was duly presented for payment at maturity, at such bank, but the maker may show that he was prepared to pay at such time and place, thereby avoiding any penalty for nonpayment. p. 50.

4.  BILLS AND NOTES.—*Payable in Bank.—Payment by Deposit.— Agency.*—A note payable in bank is not discharged by the mere deposit in such bank of sufficient money to pay it, since the bank is not the holder's agent for receiving payment unless such holder has deposited such note in such bank for collection. p. 50.

5.  BILLS AND NOTES.—*Mortgages.—Maturity.—Default of One Note of Series.—Penalties.*—A provision in a mortgage that the failure of the maker of a series of notes secured by the mortgage to pay each note at its maturity shall cause the remaining ones to become due, is not in the nature of a penalty, nor a forfeiture. p. 51.

6.  MORTGAGES.—*Default in Payment.—Equitable Relief.*—Where a mortgagor defaults in the payment of one of a series of notes, thereby causing the entire debt to become due, equity will refuse relief, except for good cause shown. p. 51.

7.  BANKS.—*Deposits.—Using for Payment of Note Payable at Bank.*—The deposit for collection of a note payable in bank authorizes such bank to apply the maker's general deposit in the payment thereof; and a failure to present the note at such bank for payment, when the maker has deposited money for its payment, relieves the maker of further interest or costs. p. 51.

8.  MORTGAGES.—*Failure to Pay.—Excuses.—Inequitable Misconduct of Mortgagee.*—Where a mortgagee's inequitable, but not necessarily fraudulent misconduct is the cause of the mortgagor's failure to pay a note at its maturity, equity will not permit the foreclosure of the mortgage, provided the mortgagor is ready to pay the note. pp. 52, 55.

9.  BILLS AND NOTES.—*Default.—Deposits in Bank.—Foreclosure for Entire Debt.—Tender.*—Where the maker of a series of notes had money on deposit with which to pay the one to become due, the payee's failure to present it, and his avoidance of the maker, in order that the provision in the mortgage might take effect, making the entire debt due upon default in the payment of any note at its maturity, will preclude his enforcement of such provision, the maker having made a tender in court of the sum due. pp. 54, 55.

10. FRAUD.—*Question of.*—*Inferences.*—Fraud, when relied on as a cause of action, or as a defense, must be found as a fact, and not be left merely to inference. p. 55.

11. APPEAL.—*Weighing Evidence.*—Where there is some evidence tending to sustain the facts found, the trial court's decision will not be disturbed for a want of evidence. p. 55.

From Boone Circuit Court; *Samuel R. Artman,* Judge.

Suit by Justus Kerbaugh against Thomas Nugent and another. From a judgment for plaintiff, he appeals. *Affirmed.*

*William J. Darnell, George R. Darnell* and *Samuel M. Ralston,* for appellant.

*Terhune & Adney,* for appellees.

HOTTEL, J.—Suit by appellant against appellees on four promissory notes of $1,000 each, and to foreclose a mortgage given to secure them.

The mortgage contains the following provision: ''Upon the failure to pay any one of said notes at maturity, all said notes are to become due and collectible.'' An alleged default in this provision gives rise to this suit.

The complaint is in one paragraph, and contains the customary averments of a complaint on a series of notes and for the foreclosure of a mortgage given to secure them, with the added averments that the mortgage in suit contained the provision before quoted, and that appellees failed to pay the first note at maturity. An affirmative answer in one paragraph was filed, to which there was a reply in general denial. On the issues thus formed there was a trial by the court, with a special finding of facts and conclusions of law, to each of which appellant at the time excepted. Appellant filed a motion for a new trial, which was overruled and exceptions saved. Thereupon the court rendered judgment for appellant in the sum of $1,248, and for appellees for costs, and that appellant ''take nothing by his suit on foreclosure of the mortgage herein.''

The errors assigned and relied upon by appellant are that the court erred in its first and second conclusions of law, and in overruling appellant's motion for a new trial.

The answer filed by appellees admits the execution of the note and mortgage sued on, but avers affirmative facts in the way of present ability and readiness to pay at the time and place fixed in the notes, and a tender, before suit, of the amount due on the first note and interest on the others. The averments of this answer, upon the questions involved, are substantially the same as the facts found by the court in its special finding of facts, hereafter set out; and as no question as to the sufficiency of this answer is presented to this court by any assignment of error, we deem it unnecessary to extend this opinion by a copy thereof. In this connection, however, it should be observed that appellant's counsel are now insisting that the answer filed was only in abatement, and was not in bar of the action, and that it is bad because it purports to answer the entire complaint, and in fact answers but a part. But the insufficiency of this answer is not presented to this court by any assignment of error, and the finding of facts being in substance the same as the averments of the answer, the same question arises on the exceptions to the conclusions of law on the facts specially found, and in such case the sufficiency of the pleading is not important. *Scanlin* v. *Stewart* (1894), 138 Ind. 574, 575; *Woodward* v. *Mitchell* (1905), 140 Ind. 406-408; *Smith* v. *Wells Mfg. Co.* (1897), 148 Ind. 333; *Lake Erie, etc., R. Co.* v. *Hoff* (1900), 25 Ind. App. 239.

A correct understanding of the questions presented by the appeal necessitates a statement of the substance of the special finding of facts and the conclusions of law thereon. The findings, after setting forth all the facts with reference to the ownership by appellant of certain flouring mill property in Boone county, its description and sale to appellees, the execution by appellees of the notes in suit in payment there-

for, the execution of the mortgage in suit given to secure them, and a copy in full of the notes and the mortgage, which copy contains the provision heretofore set out in this opinion, then proceeds, in substance, as follows: That said notes, with the accrued interest thereon, amount to $4,274.66, and a reasonable attorney's fee for their collection is $250; that by the terms of said notes they were all payable at "The Citizens State Bank at Jamestown, Indiana;" that said note falling due on February 25, 1908, was at no time deposited at said bank; that appellant was absent from the town of Jamestown during all of said day, and until after 10 o'clock that night; that on said day appellees had upon general deposit in said bank, subject to check, over $1,250, being more than enough to pay the note falling due on said day, with accrued interest thereon, and one year's interest upon each of the other three notes; that appellees on said day, prior thereto and since that day, have resided in the city of Washington, Daviess county, Indiana; that appellee Thomas Nugent at that time was conducting his milling business in the town of Jamestown by and through Henry Turner, his agent, which was well known to appellant on said day, and long prior thereto; that one week prior to said day said Turner, as the agent of appellees, in a personal conversation with appellant, ascertained when the first note would be due and the amount that would be due as principal and interest on said note, and the interest on the other three notes, but did not, at that time, learn that said notes were payable at said bank; that prior to said day appellee Thomas Nugent had notified said bank that so much of his general deposit in said bank as was necessary for that purpose was to be applied to the payment of appellant's note and interest, and, at the said time, arranged to secure additional money from said bank with which to conduct his business; that on said date said Turner, as agent of said appellee, ascertained the amount of money that said appellee then had on deposit in said bank, and informed the

officers of said bank that said appellee had sufficient money on deposit to pay the note and interest due to appellant, and that there would be a surplus; that said appellee's place of business was near said bank, and immediately across the street from appellant's residence; that during all of said day said Turner, as agent for said appellee, kept a look-out for appellant, in order to pay said note and interest, but was unable to find him; that said note was not presented at said bank for payment either on February 25, or February 26; that during February 26, 1908, appellant remained at his house practically all day, but was not seen by said Turner; that about 5 o'clock, on the evening of said 26th, appellant went to the office of a lawyer in said town of Jamestown and consulted him as to his rights in reference to said notes and mortgage; that on February 27, 1908, at about 11:30 o'clock a.m., appellant again went to the office of said lawyer, and in company with him went to said bank and presented the note that fell due February 25, 1908, and demanded payment thereof; that the officers of said bank, who had been informed by appellee Thomas Nugent and Henry Turner that the deposit of said appellee was to be applied to the payment of said note and interest, then informed said appellant that said appellee had sufficient money on deposit to pay the note presented; that they had no express authority to make payment, but that said appellee's agent, Henry Turner, was authorized to draw a check for the amount; that immediately after receiving said information appellant and his attorney left said bank, and appellant directed his attorney to institute suit upon said notes and to foreclose said mortgage; that said attorney left Jamestown on February 27, 1908, for the city of Lebanon to file suit on said notes; that upon appellant's return to his residence from the bank said Turner saw him, and told him that he desired to see him, but appellant excused himself, saying that he would see Mr. Turner after dinner; that about 12:45 o'clock p.m., on February 27, appellant went to ap-

pellee Thomas Nugent's place of business, immediately
across the street from his residence, and saw said Turner,
who informed appellant that he desired to pay the note due
February 25, with the interest thereon, and one year's in-
terest on each of the other notes, and asked appellant if he
would accept the money; that appellant informed said Tur-
ner that he would not; that said Turner thereupon impor-
tuned said appellant to accept the money, and permit him
to draw a check in payment of said note and interest, but
appellant told said Turner that he would not accept the
money or a check, that, under the provisions of the mort-
gage, the notes were all due, and that his attorney had left
Jamestown for Lebanon to file a suit upon said notes, and
to foreclose said mortgage. The findings also show that on
the same day and prior to the filing of the answer herein,
defendant paid to the clerk of the Boone Circuit Court, as
a tender of the principal of said note and the interest thereon
until that day, and one year's interest on each of the other
notes, the sum of $1,248 in standard gold coin of the United
States, which sum is still in the hands of the clerk of this
court as a tender to plaintiff in payment of the principal of
said note and the interest thereon until the day of filing said
answer and one year's interest on each of the other notes;
that on February 25, 26 and 27, 1908, and during the whole of
each of said days, appellee Thomas Nugent had on gen-
eral deposit in said bank, subject to check, a sum of money
in excess of $1,250, and prior to said dates just mentioned
the bank had been informed by said appellee that so much
of said deposit as might be necessary to pay said first note
and interest due on February 25, 1908, was to be applied to
such payment; "that plaintiff failed to present said note due
by date on February 25, 1908, to said bank on said day for
payment, and remained away from Jamestown on said date
to avoid said Henry Turner, and prevent payment on said
day, with the wrongful and deliberate purpose and intent

of making a default in the payment of said note and interest when due, in order to render all of said notes due, so as to authorize a suit thereon; and that defendant Rose Nugent is the wife of defendant Thomas Nugent.''

The court stated its conclusions of law upon the facts found, as follows: (1) "That plaintiff is entitled to a judgment against defendant Thomas Nugent for $1,248, and an order upon the clerk of this court to apply the money in his hands as a tender to the payment of said judgment; (2) That each of the defendants is entitled to a judgment against the plaintiff for costs.''

In determining the controlling question presented by this appeal, appellant has in his favor the statute and certain general principles declared and recognized by the decisions of this court and the Supreme Court.

(a)   A note made payable at a particular time and place does not impose on the payee or his assignee the necessity of averring or proving a demand at the time and place fixed by the note, but the maker may show a readiness to pay such demand at such time and place. §374 Burns 1908, §368 R. S. 1881; *Glatt* v. *Fortman* (1889), 120 Ind. 384; *Eaton, etc., R. Co.* v. *Hunt* (1863), 20 Ind. 457; *Brown* v. *McElroy* (1876), 52 Ind. 404, 406; *Dillingham* v. *Parks* (1902), 30 Ind. App. 61.

(b)   It follows from the statement just made that the maker of a promissory note payable at a particular bank cannot discharge such obligation by depositing in such bank the funds with which to pay said obligation, and that money so deposited in such bank cannot be deemed to be deposited with the payee's agent, except, that in case the holder of such note deposits it at such bank for collection, he thereby constitutes such bank his agent for such purpose. *Glatt* v. *Fortman, supra; Wallace* v. *McConnell* (1839), 13 Pet. *136, 10 L. Ed. 95; *Dillingham* v. *Parks, supra.*

(c)   Provisions in a mortgage of the kind here in ques-

tion are not in the nature of penalties or forfeitures, "but are to be regarded as agreements between the parties

5.  fixing the time and conditions upon which the whole debt may become due." *Moore* v. *Sargent* (1887), 112 Ind. 484; 1 Jones, Mortgages (6th ed.) §76.

(d)  In such provisions time is of the essence of the contract, and a court of equity will not relieve the mort-

6.  gagor from a default, unless he can show some good excuse for it. *Moore* v. *Sargent, supra*; 2 Jones, Mortgages (6th ed.) §1179.

On the other hand, there are holdings that throw light upon this question from appellees' viewpoint. Upon the subject of appellees' conduct with reference to the default, and the effect of depositing the money at the place of payment, the courts of our own State and other states have expressed their opinions.

In the case of the *Bedford Bank* v. *Acoam* (1890), 125 Ind. 584, 587, 9 L. R. A. 560, 21 Am. St. 258, the court said: "While we are not inclined to the view that a promis-

7.  sory note negotiable and payable at a bank in this State is, in all respects, the equivalent of a check drawn by the maker against a fund on deposit in the bank, so as to require the banker to pay the note on presentation out of funds applicable to that purpose, we can conceive of no valid reason why a note or bill thus drawn should not be held to authorize the banker to pay, and thereby become subrogated to all the rights of the holder to the same extent as if it had purchased the paper after maturity."

In the case of *Wallace* v. *McConnell, supra,* at page *150, the court said: "And when a note or bill is made payable at a bank, as is generally the case, it is well known, that according to the usual course of business, the note or bill is lodged at the bank for collection; and if the maker or acceptor calls to take it up, when it falls due, it will be delivered to him, and the business is closed. But should he not find his note or bill at the bank, he can deposit his money, to meet the

note, when presented, and should he be afterwards prosecuted, he would be exonerated from all costs and damages, upon proving such tender and deposit."

This court, in the case of *Dillingham* v. *Parks, supra,* at page 70, said: "Where the maker has no defense to the note and has money on general deposit at such bank, it may, in this State, in good faith, apply such funds in payment of the note upon the presentation thereof by the holder at maturity, and may set off the amount so paid against the demand of the maker for the money so on general deposit. * * * The failure to make presentment at the bank does not relieve the maker from his promise to pay, but only relieves him from damages in case he is ready at the bank to pay, and there is no one there to receive the money. Such facts are regarded as equivalent to a tender of the sum payable; and an answer showing such tender and payment of the money due into court will bar a recovery of interest and costs, but will not bar the cause of action on the note." To the same effect is the case of *Bedford Bank* v. *Acoam, supra.*

Concerning the causing of the default by the acts or conduct of the payee of the obligation, and the effect thereof, our own and other courts have expressed

8. themselves in the following cases. In *Moore* v. *Sargent, supra,* it was said: "If the default was induced by the fraudulent or inequitable conduct of the creditor, or by any agreement or promise upon which the debtor might rely which operated to mislead or throw the debtor off his guard, a court of equity would interfere to stay proceedings or the action might be abated upon the facts being properly pleaded." In *Eaton, etc., R. Co.* v. *Hunt, supra,* it was said at page 468: "But if the maker on the trial proves that the money was at the place, ready to be applied in payment when the note fell due, he will not be subject to costs. *Indiana, etc., R. Co.* v. *Davis* [1863], 20 Ind. 6." It was said in *Glatt* v. *Fortman, supra,* that "the readiness to pay at the place designated constitutes a defense, if properly fol-

lowed up.'' In *Noyes* v. *Clark* (1838), 7 Paige (N. Y.) 179, 180, 32 Am. Dec. 620, it was said: ''A court of equity, however, will not permit the mortgagee, or his assignee, to take an unconscientious advantage of the mortgagor who is willing to pay at the time prescribed but who is unable to do so in consequence of the act of the other party. * * * In this case it is evident that the defendant Clark was both ready and willing to pay the interest on his bond and mortgage on the day it became due. And if the assignee did not intentionally deprive him of the power of doing so, by keeping out of the way and concealing his place of residence, he transacted the business of the assignment in such an unusual manner as to produce the same result. * * * The case of *Johnson* v. *Houlditch* [1758], 1 Burr. 578, is in point to show the authority of the court to interfere and stay the proceedings in such a case. There the plaintiff had kept out of the way to prevent a tender of the debt, and the court, upon the ground that the suit was oppressive, ordered the suit to be stayed upon payment of the amount due, without costs, although a technical right of action existed when the suit was brought.'' In *Bell* v. *Romaine* (1878), 30 N. J. Eq. 24, it is said at page 28: '' 'If the complainant has given further day of payment, or in any other way waived the payment, according to the letter of the bond, the default contemplated and provided against has not happened.' [*DeGroot* v. *McCotter* (1866), 4 C. E. Gr. 175.]''

Pomeroy says upon this same subject: ''It seems also that a court of equity may relieve against the effect of such provision, where the default of the debtor is the result of accident or mistake, and *a fortiori* when it is procured by the fraud or other inequitable conduct of the creditor himself.'' 1 Pomeroy, Eq. Jurisp. (3d ed.) §439.

We might quote from the decisions of courts of other jurisdictions language similar to that just expressed, but we think we have quoted sufficiently to show that the general tendency of the decisions of the courts upon this sub-

ject is to hold that a suitor may not come into a court of equity and successfully invoke the aid of such court to foreclose a lien, and subject to sale the property of another on the account of a default for which such suitor is himself responsible, especially when the party in default stood ready and willing at the agreed time and place to prevent the default.

Appellant concedes that "if nothing were involved in this case but the right to recover upon the first note, the judgment is right," but insists that as it was "agreed in

9.  the mortgage that the failure to pay any one of said notes at maturity should cause all of said notes to become due and collectible, the court is wholly without authority to say that the readiness of appellees to pay any of said notes at maturity should prevent the remaining notes from falling due."

It must be conceded that appellant's position is strongly supported by the authorities before cited, if he be right in his assumption that the finding of facts shows no more than a mere readiness of appellees to pay the first note at maturity, and the interest on the others at the time and place fixed in said note for its payment; but it is in this assumption that counsel are in error. The findings show more than a readiness on the part of appellees to pay. They show that appellee Thomas Nugent actually placed and kept on deposit in the bank where said note was made payable the money for the purpose of making such payment, with instructions to the bank that the money on deposit was for such purpose, and that payment was prevented on the day it was due on account of the failure of appellant to present said note, with the intent and purpose of causing a default in such payment in order to render all of said notes due so as to authorize suit thereon. Under such facts, to conclude other than as the lower court concluded in this case would be to run counter to the rules of equity, and permit the

mortgagee to take an unconscionable advantage of the mortgagor who was ready and willing to pay at the time and place prescribed in his agreement, but was prevented from so doing by the acts of the mortgagee. But appellant insists that where the mortgagor fails to pay at the time fixed, he can be relieved from such default in payment only by showing that such payment was prevented "by accident, mistake or fraud of the creditor," and that none of such facts is found by the special findings in this case. If, in the absence of a finding of accident or mistake as the cause of the default, it were necessary to find that said default was caused by the fraud of the payee, appellant's contention would be supported by authority, because there is in this case no finding of fraud, and we recognize the rule that requires fraud to be found as a fact and not left to inference where it is relied upon as a cause of action or defense. But we do not regard the holdings as requiring that fraud shall be proved in case accident or mistake is not proved. The decisions before cited include all inequitable conduct on the part of the payee that causes the default. The payee is just as much bound by the terms of the provision upon which the default rests as is the maker. Such provision is not intended as a means whereby he may, at his own option, take advantage of the maker, and by his own conduct force the default; but, if he by his own act causes the default, whether the act on his part was by deceit and fraud, or by some other means, he may in no event take advantage of the default which he so caused. For these reasons we are of the opinion that there is no error in the conclusions of law on the facts found.

Appellant insists that neither the decision of the court nor the facts found are sustained by sufficient evidence. But an examination of the evidence in the record convinces us that there was evidence tending to support each finding, and that neither of the several

grounds of the motion for a new trial, presenting this question in different forms, presents any reversible error.

The only other ground of the motion for a new trial, presented by the points and authorities of appellant, relates to the exclusion of certain offered evidence of appellant on cross-examination. We are of the opinion that no error was committed in the exclusion of this evidence; but, in any event, our view of the case, as before expressed, upon the question of there being no necessity for a finding of fraud in this case, eliminates any prejudicial or controlling influence resulting from the exclusion of the evidence offered. We find no error in the record.

Judgment affirmed.