COFER et al. v. BEVERLY. (No. 942.)

(Court of Civil Appeals of Texas. Amarillo. March 15, 1916.)

1. PLEADING ⚙⟶228 — INTENDMENTS FAVORING—ABSENCE OF SPECIAL EXCEPTION.

In the absence of special exception, every reasonable intendment will be indulged in favor of a plea.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 584–590; Dec. Dig. ⚙⟶228.]

**2. BILLS AND NOTES ☞129(1)—MATURITY— ELECTION OF HOLDER.**

Where the maturity of a note rests at the election or option of the holder, until such option is exercised the debt, for the full amount, will not be considered due.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 283, 284, 286–291; Dec. Dig. ☞129(1).]

**3. BILLS AND NOTES ☞129(2)—MATURITY— FAILURE TO PAY INSTALLMENT — OVERDUE PAYMENT.**

Where the failure to pay an installment of a debt ipso facto gives rise to a cause of action upon the whole debt, it is not the rule that by acceptance of payment of overdue installments or extension of time upon an installment the creditor waives the default.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 285, 292; Dec. Dig. ☞129(2).]

**4. BILLS AND NOTES ☞129(2) — VENDOR'S LIEN NOTE—OPTION TO DECLARE DUE—ESTOPPEL.**

Where the holder of a vendor's lien note, providing that failure to pay it or any installment of interest should, at the holder's option, mature such note, made an agreement with the makers that an interest installment might be paid subsequently to its due date, when such makers had realized funds therefor from the sale of grain raised on the premises, such holder and his assignee were estopped from declaring the entire debt due and foreclosing for the makers' failure to pay the installment of interest on the due date; the makers discharging their obligation to the assignee by tendering interest as soon as they learned of the transfer of the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 285, 292; Dec. Dig. ☞129(2).]

**5. BILLS AND NOTES ☞129(2) — RELEASE FROM PAYMENT.**

Where a mortgagor makes an honest but unsuccessful effort to find the mortgagee and to tender him his interest and is prevented from ascertaining the owner of the note, the courts have the power to release the mortgagor from the effect of nonpayment which would otherwise mature the whole debt.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 285, 292; Dec. Dig. ☞129(2).]

**6. BILLS AND NOTES ☞344—AGREEMENT TO EXTEND TIME FOR PAYMENT OF INTEREST— BINDING FORCE ON ASSIGNEE.**

Where the holder of a vendor's lien note exercised his option, when an installment of interest fell due, to declare the whole debt due for failure to pay the installment, an agreement by such holder, after declaring the note due, to extend the time for payment of interest, bound his assignee.

[Ed. Note.—For other cases, see Bills and Notes, Cent.Dig. §§ 866–868; Dec.Dig. ☞344.]

**7. BILLS AND NOTES ☞318—PRECIPITATING MATURITY—POSITION OF PURCHASER.**

Where the purchaser of a vendor's lien note from the holder thereof was in possession of facts which would have led him to knowledge that by agreement between the holder and the makers the time for the payment of an installment of interest was extended, such purchaser stood in the shoes of the holder, and could not, under the provisions of the note, precipitate maturity of the whole debt for failure to pay the installment.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 754; Dec. Dig. ☞318; Vendor and Purchaser, Cent. Dig. § 864.]

Appeal from District Court, Dallam County; D. B. Hill, Judge.

Suit by Wm. Beverly against W. R. Cofer and another. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

Clifford Braly, of Dalhart, and Ben H. Stone, of Amarillo, for appellants. Tatum & Tatum, of Dalhart, for appellee.

HUFF, C. J. Appellee, Wm. Beverly, brought this suit against the appellants, W. R. Cofer and L. W. Cofer, on a vendor's lien note, alleged to have been executed on the 27th day of February, 1914, payable to John F. Ladd and Bernice C. Ladd, for the sum of $2,000, payable to their order on or before five years after date, with 6 per cent. interest from date, interest payable annually at Dalhart, Tex. It is provided in the note "that the failure to pay said note or any installment of interest thereon, when due, shall, at the option of the holder of said note, mature said note," and for 10 per cent. attorney's fees. The vendor's lien was sought to be foreclosed on a certain section of land. It is alleged that about the ――― day of January, 1915, John F. Ladd and Bernice C. Ladd sold and transferred the note to Willie C. Dawson, for a good and valuable consideration, and that about the 17th day of March, 1915, Willie C. Dawson, joined by her husband, G. W. Dawson, sold and transferred the note to the appellee Beverly. The appellants by answer alleged:

"That on the date said interest on said note became due and payable, to wit, February 27, 1915, said note was owned and held by G. W. Dawson and his wife, Willie C. Dawson, as their community property, but said note being in reality indorsed to and held in the name of the said Willie C. Dawson, and that on or about the said last-mentioned date, defendant W. R. Cofer, acting for himself and defendant L. W. Cofer, at the instance and request of the said L. W. Cofer, approached the said G. W. Dawson concerning an extension of the time in which the said owners and holders of said note would require the payment of said interest before exercising their option of accelerating the payment of said note and accrued interest thereon. That the said W. R. Cofer, then and there stated and explained to the said G. W. Dawson that if said holders of said note then required that said interest be immediately paid, defendants would immediately raise the amount required and pay said interest, but that it was the purpose and desire of defendants to pay said interest from the proceeds of sale of certain grain raised on the lands and premises herein sought to be foreclosed upon, and which grain was then prepared, and being prepared, for market and sale. That said grain would be brought in and marketed at Dalhart, Tex., as soon as reasonably possible, and the sum necessary to pay said interest would be thereby acquired and applied in payment of said interest, and requested that the date of payment of said interest be extended to such a future date as would reasonably enable defendants to so market said grain and so raise said funds. That the said G. W. Dawson, then and there for himself and wife, Willie C. Dawson, agreed and promised defendants said requested extension. That while no

definite future date was then fixed and designated at which said interest was to be paid, and to which extension was granted as aforesaid, still defendants allege that 20 to 30 days was a reasonable time in which to have so marketed said grain, and further say that it was then understood and contemplated by the said Dawson and defendants that the time stated would be required to so market said grain and thereby raise said interest money, and that the said Dawson intended to, and did, then and there, as aforesaid, extend the due date of said interest for the period of time mentioned."

The appellants further allege that they relied on the representations and agreements so made, and were endeavoring to comply therewith when the Dawsons sold the note to the appellee, that neither of the Dawsons notified or advised appellant of the transfer of the note to appellee, and that appellee made no presentation of the note to the appellants, but wrongfully attempted to declare the principal sum called for then due and payable. They allege that they were first notified that J. R. Beverly, a brother of appellee, had purchased the note, and that they called on him and were informed that it was his brother, the appellee, who purchased the note, and that he was then out of town, etc., and they alleged, substantially, that they were unable to find him, and the note was placed in the hands of attorneys by Beverly about the 18th or 19th of March, who notified the appellants that they held the note, and that they tendered the interest due on the note, together with the accrued interest on that sum, to the attorneys, who refused to accept the same, and notified the appellants that they would institute suit for the full amount. They further alleged that it would be a great hardship on them at that time to meet the entire obligation, and but for the agreements that they had had with Dawson and their inability to find the owner of the note, they would have paid the interest at maturity, and that they could have done so and would have done so but for the fact that the time for paying the interest was extended. They also set up the value of the premises, and that it would be inequitable to sell the property at this time, and set up their inability to obtain the full amount of the note, principal, and interest. There was a general exception to this answer by the appellee, which the court sustained, and, the appellants declining further to amend, the court rendered judgment for the appellee for the full amount of the note, principal, interest, and attorney's fees, foreclosing the lien on the land securing the same. From this judgment the appeal is prosecuted.

[1, 2] The plea of appellants is, in its nature, a plea to abate. The provision of the note is:

"A failure to pay said note, or any installment of interest thereon when due, shall, at the option of the holder of the said note, mature said note."

[3] It is alleged that the owner and holder of the note, when the installment of interest fell due, agreed to extend its payment until the thrashing and marketing of certain grain, and that it was understood it would take about 30 days at the time of the agreement to do so. While the allegations are not very specific, yet every reasonable intendment will be indulged in favor of the plea in the absence of a special exception. The only exception presented and sustained is a general exception. As we understand the authorities, where the maturity of the note rests at the election or option of the holder, until such option is exercised, the debt for the full amount will not be considered due. Harrington v. Claflin, 28 Tex. Civ. App. 100, 66 S. W. 898; Association v. Stewart, 94 Tex. 441, 61 S. W. 387, 86 Am. St. Rep. 864; Moline Plow Co. v. Webb, 141 U. S. 616, 12 Sup. Ct. 100, 35 L. Ed. 879; Moore v. Sargent, 112 Ind. 484, 14 N. E. 466. If the allegations of the answer are true, default in the payment of the interest was not suffered on account of the neglect of the makers of the note, but they sought the holder and secured an agreement to wait upon them until the grain mentioned could be marketed. This is evidence, at least, that the then holder of the note had waived the option to mature the note. In the case of Association v. Stewart, supra, our Supreme Court said:

"Authorities holding that by acceptance of payment of overdue installments, or extension of time upon an installment, and other like acts, the creditor waives the default, are relied upon, but those are decisions in which the contract is regarded as only giving to the creditor the right of election";

—but such is not the rule where the failure to pay an installment ipso facto gives rise to the cause of action upon the whole debt. Upon the latter proposition, that court said:

"Any agreement the parties might make, which would have the effect of obviating the default and restoring the contract to its original condition as if it had not been broken, would be supported by a sufficient consideration. The debtor would secure from the creditor further credit, and give up his right to discharge the whole liability at once. Benson v. Phipps, 87 Tex. 578 [29 S. W. 1061, 47 Am. St. Rep. 128]; Austin, etc., Abstract Co. v. Bahm, 87 Tex. 582 [29 S. W. 646, 30 S. W. 430]. But, aside from this, while neither party by his separate action or nonaction could impair the rights of the other, each could waive his own rights as they accrue from the default in payment of an installment, so as to estop him from relying upon such default. To accomplish this, it would only be necessary that each should so act as to justify the other in believing and acting upon the belief that the effect of the failure to pay an installment was to be disregarded, and that the contract should stand as if there had been no default. The principle of estoppel by waiver would, we think, have proper application in such a case. Bish. on Con. §§ 789–808; Big. on Estop. p. 633 et seq.; Insurance Co. v. La Croix, 45 Tex. 158; Insurance Co. v. McGregor, 63 Tex. 404. An agreement or waiver, having the effect supposed, may be inferred from the conduct and declarations of the parties as well as evidenced by their express stipulations."

In the case under consideration, as in the one above, it is said by the attorneys there was no binding agreement. The Supreme Court answered that proposition as follows:

"The distinction is in this: The contract was in writing, fixing times and terms of credit, which were affected only by the default causing maturity earlier than such dates. It was therefore only necessary to take away the effect of the default, and to restore the contract as it was before that occurred, when its terms would be perfectly definite and certain." Lester v. Hutson, 167 S. W. on page 327.

[4] It occurs to us that the principles announced in the above case settle the question that if the holder of the note waived his right to hasten the payment of the note, by entering into an agreement that the interest installment could be paid at a time subsequent to its due date, he and his assignee would be estopped from advancing the payment. If the maker of the note relied upon this promise it appears to us it would be inequitable to permit the holder of the note to refuse to receive the interest and to declare due the whole debt. It appears to be the holding of the courts where the option rests with the creditor, if the default is induced by—

"any agreement or promise upon which the debtor might rely, which operated to mislead or throw the debtor off his guard, a court of equity would interfere to stay proceedings, or the action might be abated upon the facts being properly pleaded." Moore v. Sargent, 112 Ind. 486, 14 N. E. 467; 2 Jones on Mortgages, §§ 1185, 1186.

Where the course of dealings lead the mortgagor to assume that if forfeiture would not be declared if the interest was paid within periods varying from one to six months after the time it became due, foreclosure has been refused by the New York courts. French v. Row, 77 Hun, 380, 28 N. Y. Supp. 849; German, etc., v. Potter, 124 App. Div. 814, 109 N. Y. Supp. 435. The reasons for refusing a foreclosure appear to us to be stronger in this case, where the parties agreed that the time for the payment of the interest installment shall be extended until certain grain is marketed. Taylor v. McFatter, 109 S. W. 395.

[5] It appears also from the answer that appellants were not notified that Dawson had transferred the note to appellee after the agreement to wait for the interest; that upon learning of this through rumor, appellants sought to find appellee, but he was not in town or at home, but was reported out of town. They allege they were ready to pay the interest, and sought him for that purpose, but could not find him. When they received the letter from the attorneys who had the note, they at once called upon them and tendered to them the interest, together with interest on the amount for the time delayed. This the attorneys refused to accept, and in a day or so thereafter instituted suit for the entire debt, with foreclosure. If a mort-

gagor has made an honest and unsuccessful effort to find the mortgagee and to tender to him his interest, and is thereby prevented from ascertaining the owner of the note, the courts have the power to release the mortgagor from the payment of the whole principal. 2 Jones on Mort. § 1185; Noyes v. Clark, 7 Paige (N. Y.) 179, 32 Am. Dec. 620; Hale v. Patton, 60 N. Y. 233, 19 Am. Rep. 168; Kerbaugh v. Nugent, 48 Ind. App. 43, 95 N. E. 336; Glatt v. Fortman, 120 Ind. 384, 22 N. E. 300.

[6, 7] The interest was due February 27th, and the agreement, according to the allegation, was then had with Dawson. After that, on the 17th of March, Dawson transferred the note to appellee. The note stipulated the nonpayment of interest, "when due," at the option of the holder shall mature the note. The appellee got the note after the interest was due. If the holder, at the time the interest so fell due, exercised his option, the note was past due when appellee became the holder, and proof of the agreement could be made and would bind the appellee. If the option had not been exercised when appellee purchased the note, the appellee was in possession of facts which would have led him to a knowledge that by agreement the time for the payment of the interest was waived. Appellee, we think, is in no better position than Dawson would have been.

Before concluding we will call attention to the case of Workman v. Ray, 180 S. W. 291, decided by this court, which may, upon casual consideration, be regarded as in conflict with this case. In that case, however, the option does not appear to have rested with the payee of the note, and we there construed the pleadings of the mortgagee as admitting the notes were then all due and payable. The contract was not urged as rendering the suit premature, but it was sought therein to recover damages for a breach of the contract. We there held there was no consideration shown for that contract, but that case certainly is distinguishable from this.

We believe the trial court was in error in sustaining the general exception to the answer of appellants, and the case will be reversed and remanded.

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.